*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
ELECTRONIC CITATION: 2001 FED App. 0415P (6th Cir.)
File Name: 01a0415p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

DEJA VU OF NASHVILLE, INC.,
a Tennessee corporation;
MICHAEL RUCKER,
individually; MICHAEL
BUTLER, individually;
MERONEY ENTERTAINMENT,
INC., d/b/a Ken's Gold Club,
a Tennessee corporation; THE
PLEASURE PALACE, INC., a
Tennessee corporation;
DAWN PIERCE, individually;
ELIZABETH MARTZ,
individually; JERRY C.
PENDERGRASS, individually;
THE 822 CORPORATION; THE
421 CORPORATION,
      *Plaintiffs-Appellants*
      *(99-5071),*
      *Plaintiffs-Appellees*
      *(00-5881),*
      *Plaintiffs-Appellees/*
      *Cross-Appellants*
      *(00-5284/5288),*

      *v.*

Nos. 99-5071;
00-5284/5288/5881

2      *Deja Vu of Nashville, Inc.,*      No. 99-5071;
       *et al. v. The Metropolitan*      00-5284/5288/5881
       *Gov't of Nashville, et al.*

THE METROPOLITAN
GOVERNMENT OF NASHVILLE
AND DAVIDSON COUNTY,
TENNESSEE; EMMETT
TURNER, Chief of Police of
the Metropolitan Police
Department,
                *Defendants-Appellees*
                        *(99-5071),*
                *Defendants-Appellants*
                        *(00-5881),*
                *Defendants-Appellants/*
                *Cross-Appellees*
                *(00-5284/5288).*

Appeal from the United States District Court
for the Middle District of Tennessee at Nashville.
Nos. 97-01066, 97-01176—John T. Nixon,
Thomas A. Higgins, District Judges.

Argued:  January 24, 2001

Decided and Filed:  December 6, 2001

Before:  MARTIN, Chief Judge; WELLFORD and
        SUHRHEINRICH, Circuit Judges.

_____

**COUNSEL**

**ARGUED:** Bradley J. Shafer, SHAFER & ASSOCIATES,
P.C., Lansing, Michigan, for Plaintiffs.  Karl F. Dean,
METROPOLITAN GOVERNMENT OF NASHVILLE &

No. 99-5071;          *Deja Vu of Nashville, Inc.,*   43
00-5284/5288/5881        *et al. v. The Metropolitan*
                         *Gov't of Nashville, et al.*

Accordingly, I respectfully dissent from parts of the
majority decision for the reasons indicated.

_____

regulating newspaper racks on city streets.  The later case of *FW/PBS*
states the principle applicable in this situation:  "Limitation on the time
within which the licensor must issue the license as well as the availability
of prompt judicial review satisfy the 'principle that the freedoms of
expression must be ringed about with adequate bulwarks.'" *FW/PBS*, 493
U.S. at 230.

42    *Deja Vu of Nashville, Inc.,*    No. 99-5071;
*et al. v. The Metropolitan*    00-5284/5288/5881
*Gov't of Nashville, et al.*

sexual, or other illegal discriminatory animus, thus allowing the plaintiff to "speak" pending final adjudication. Furthermore, under the majority holding of *FW/PBS*, I believe that a rejected applicant has the opportunity for an adequate and expeditious judicial review based upon available remedies, as supported also by the affidavit of the Clerk of the Davidson County Chancery Court. There is a sufficient protection in such an event of denial of a meritorious application under the ordinance and the proof for prompt judicial review; in short, there is an "adequate bulwark" by judicial review available. The majority opinion states in footnote 8 that "[t]he ordinance does preserve the status quo by allowing existing businesses to continue to operate *until an adjudication on the merits* and by issuing a temporary license to new businesses if the court fails to rule within forty days of the filing of an appeal." (Emphasis added.) I agree with this interpretation of the effect of the ordinance, and this also presents an adequate and reasonable bulwark constitutionally, in my view.

In sum, I respectfully disagree that there is, in this ordinance, "lack of judicial review provision." There is not only such a provision but there is also a reasonable stay provision to protect a plaintiff pending judicial review. We are not dealing in this case with censorship, or attempted censorship, of speech, books, or films (as in *Freedman, supra*).

Finally, even if the judicial review provisions were inadequate, I would conclude that the severance provision in the ordinance is effective, and I would not agree to void enforcement of the entire ordinance because of perceived insufficient means of prompt judicial review.[6]

---

[6] A case cited as giving support to the majority view is a four-to-three decision of the court, *Lakewood v. Plain Dealer Publishing Co.*, 486 U.S. 750 (1988), which permitted a facial challenge to a municipal ordinance

No. 99-5071;    *Deja Vu of Nashville, Inc.,*    3
00-5284/5288/5881    *et al. v. The Metropolitan*
*Gov't of Nashville, et al.*

DAVIDSON COUNTY, Nashville, Tennessee, for Defendants. **ON BRIEF:** Bradley J. Shafer, Andrew K. Wilkins, SHAFER & ASSOCIATES, P.C., Lansing, Michigan, Michael F. Pleasants, Memphis, Tennessee, H. Louis Sirkin, Laura A. Abrams, Jennifer M. Kinsley, SIRKIN, PINALES, MEZIBOV & SCHWARTZ, Cincinnati, Ohio, John E. Herbison, Nashville, Tennessee, for Plaintiffs. Francis H. Young , Shayna R. Abrams, METROPOLITAN DEPARTMENT OF LAW, Nashville, Tennessee, for Defendants.

MARTIN, C. J., delivered the opinion of the court, in which SUHRHEINRICH, J., joined. WELLFORD, J. (pp. 37-43) delivered a separate opinion concurring in part and dissenting in part.

_____

**OPINION**

_____

BOYCE F. MARTIN, JR., Chief Judge. On August 19, 1997, the Council for the Metropolitan Government of Nashville and Davidson County, Tennessee, passed an ordinance, now codified as Metropolitan Code of Laws Chapter 6.54, "Sexually Oriented Businesses," containing licensing requirements for adult entertainment businesses. Shortly thereafter, plaintiffs in this consolidated appeal filed suit in federal court to enjoin the Ordinance's enforcement on First and Fourteenth Amendment grounds. Since that time, injunctions have been issued, dissolved, and issued anew in response to the four amended versions of the Ordinance enacted by Metropolitan Nashville during the four-year pendency of this litigation.[1] The parties now appeal and

---

[1] Although Metropolitan Nashville has enacted four new versions of the Ordinance in response to various rulings by the district court, with the most recent version enacted in 2000, only the 1999 version is relevant to

4    *Deja Vu of Nashville, Inc.,*        No. 99-5071;
      *et al. v. The Metropolitan*       00-5284/5288/5881
      *Gov't of Nashville, et al.*

cross-appeal various aspects of the district court's injunctive and procedural rulings.

I.

The Ordinance requires all "sexually oriented businesses" to obtain a license issued by the Sexually Oriented Businesses Licensing Board before being permitted to operate. *See* Metropolitan Code of Laws § 6.54.030(A). Additionally, all entertainers working within a sexually oriented business must obtain a permit from the Board. *See* M.C.L. § 6.54.060(A). The permit requirements are essentially identical to the license requirements. *See* M.C.L. § 6.54.080(A). Licenses and permits must be renewed on a yearly basis, and can be suspended or revoked for, among other things, repeated failure to comply with any of the licensing or permitting requirements, failure to pay required fees, or knowingly denying access to law enforcement personnel during business hours. *See* M.C.L. §§ 6.54.110; 6.54.150(A)(2), (3), and (6). The Ordinance includes a civil disability provision (M.C.L. §§ 6.54.050(B)(2); 6.54.080(A)(2)), a disclosure provision (M.C.L. §§ 6.54.040(A)(5); 6.54.070 (A)(4)), and a no-touch/buffer zone provision (M.C.L. § 6.54.140(C)), applicable to all license and permit-seekers. Metropolitan Nashville charges applicants five hundred dollars to apply for a license, and one hundred dollars to apply for a permit. *See* M.C.L. § 6.54.090.

The plaintiffs are a group of establishments and individuals providing adult entertainment in the form of live nude or semi-nude performance dance, as well as selling, renting or presenting sexually oriented books, magazines, and videos. The "Deja Vu plaintiffs" include four corporations, two owner/operators, and two dancers. The "Pendergrass

---

this appeal. Every citation thus will be to the 1999 version unless otherwise noted.

No. 99-5071;        *Deja Vu of Nashville, Inc.,*    41
00-5284/5288/5881      *et al. v. The Metropolitan*
                       *Gov't of Nashville, et al.*

the civil disability provision of the ordinance. *Id.* at 234-35. The Court held that there was no standing to challenge revocation on the basis of past criminal conviction or conduct where no petitioner actually demonstrated revocation of a license under the civil disability provision. *Id.* at 235.

I believe that the Ordinance at issue does meet the standards set out in *FW/PBS*, because it provides for much more than a "possibility" of prompt judicial review. Sections 6.54.04(E) and 6.54.070(D) of the ordinance specify certain procedures for obtaining relief from denial of a license or permit. First, a denial "*may be* immediately appealed to the circuit or chancery courts of Davidson County." (Emphasis added.) There is no requirement in the ordinance as to the form of relief that may be sought by the unsuccessful applicant.[5] There is no reason why an applicant may not pursue a declaratory judgment action or seek injunctive relief if a constitutional issue is claimed to be involved in either state or federal court because of an asserted invalid or improper denial. If the applicant, under the above sections of the ordinance, does choose to appeal by seeking a writ of certiorari, he or she is provided with a prompt record and an opportunity to challenge the procedures involved in a denial. Contrary to the Chief Judge, I believe that *State v. Johnson*, 569 S.W.2d 808 (Tenn. 1978), does support the proposition that Tennessee court would entertain a petition for a writ of certiorari from denial of an application even if the action taken were discretionary in nature.

I respectfully disagree with the statement by the majority in footnote 7, because temporary injunctive relief or mandamus could issue in a § 1983 suit against Metropolitan Nashville if an application were denied based on, for example, racial,

---

[5]Despite any purported argument made to the effect that appeal by writ of certiorari is the only statutory avenue of relief upon denial of an application, the ordinance speaks for itself in this regard.

40  *Deja Vu of Nashville, Inc.,*        No. 99-5071;
      *et al. v. The Metropolitan*       00-5284/5288/5881
      *Gov't of Nashville, et al.*

censorship area, *Freedman* mandated a procedure "which must . . . assure a prompt final judicial decision." *Id.* at 59. The Supreme Court emphasized the need for prompt judicial review of film censorship laws, recognizing that in the Maryland scheme there was "*no assurance* of prompt judicial determination." *Id.* at 60 (emphasis added). Apparently, the scheme contained no provision for judicial review of film censorship, an entirely different circumstance from the instant case. Whether or not there is an adequate provision for prompt judicial review in these circumstances is a legal question and forms a basis for injunctive relief if it is wanting. The legality of prior restraints of freedom of expression in adult sexually-oriented businesses, while not illegal per se, requires the special attention of this court. *FW/PBS*, 493 U.S. at 225-26. To be constitutional, a prior restraint must place reasonable and prompt time constraints on the administrative process of issuing business licenses and permits and must provide "expeditious judicial review" of administrative decisions. *Id.* at 227 (citing *Freedman,* 380 U.S. at 58-60).[3]

The Court in *FW/PBS* mandated that any such licensing scheme provide for the "*possibility* of prompt judicial review in the event that the license is erroneously denied." *Id.* at 228 (emphasis added). The Court also relied on the specific circumstances of that case in holding that, unlike *Freedman*, the city did not have the burden of proof once in court. *Id.* at 230. The question of prompt judicial review of the license permit action was whether there were "adequate bulwarks."[4] *Id.* Moreover, the Court in *FW/PBS* raised on its own volition the question of standing of certain plaintiffs who challenged

---

[3] *FW/PBS* makes it clear that the "licensing scheme" in this type of case "does not present the grave dangers of a censorship system" that was present in *Freedman. FW/PBS*, 493 U.S. at 228.

[4] The authority cited for this proposition was *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58 (1962), a book censorship case. The Rhode Island law at issue in *Sullivan* provided for no judicial review.

No. 99-5071;              *Deja Vu of Nashville, Inc.,*   5
00-5284/5288/5881              *et al. v. The Metropolitan*
                              *Gov't of Nashville, et al.*

plaintiffs" include two corporations and one owner/operator. All the plaintiffs fall within the Ordinance's definitions of either "sexually oriented business," "operator," or "entertainer," and thus each is subject to the Ordinance's requirements. *See* M.C.L. §§ 6.54.010(G), (P), and (Y), respectively.

In October 1997, the Deja Vu plaintiffs sought a preliminary injunction based solely on the ground that the Ordinance failed to provide prompt judicial review of licensing decisions by the Board. The Deja Vu plaintiffs reserved their right to request a future preliminary injunction on other grounds. Shortly thereafter, the Pendergrass plaintiffs filed a similar complaint, requesting a preliminary injunction on the grounds that the Ordinance failed to provide prompt judicial review of licensing decisions and that its civil disability provisions violated the First Amendment. On December 11, the district court consolidated the two cases and granted a preliminary injunction because the Ordinance failed to provide for prompt judicial review; the district court did not address the constitutionality of the disability provisions. Metropolitan Nashville subsequently amended the Ordinance, and, on December 7, 1998, the district court dissolved the preliminary injunction. The plaintiffs timely appealed the dissolution.

The plaintiffs also moved for another preliminary injunction, raising all of their constitutional challenges to the Ordinance. On October 1, 1999, the district court granted the motion, finding the definitions of "sexually oriented" and "sexually oriented theater," the civil disabilities provision, the disclosure provision, and the fee amounts unconstitutional. The court further found that the tainted provisions could not be severed, and therefore enjoined the entire Ordinance. In December, the district court made the preliminary injunction permanent. Metropolitan Nashville timely appealed the district court's decision striking down the definitions and the civil disability, disclosure, and fee provisions; the refusal to

6   *Deja Vu of Nashville, Inc.,*          No. 99-5071;
   *et al. v. The Metropolitan*          00-5284/5288/5881
   *Gov't of Nashville, et al.*

sever the tainted provisions; and the imposition of the permanent injunction. The plaintiffs timely cross-appealed the district court's decision upholding the Ordinance's definition of "sexually oriented business/establishment" and the buffer zone/no-touch provision. The plaintiffs also appealed the district court's grant of a protective order to Metropolitan Nashville.

In early 2000, Metropolitan Nashville again amended the Ordinance to remove the portions that the district court found unconstitutional, and then filed a Rule 60(b) motion to dissolve the injunction with the district court. The district court denied the motion on the grounds that it no longer had jurisdiction over the case because Metropolitan Nashville had already appealed its judgment to this Court. Metropolitan Nashville timely appealed that decision as well.

## II.

As an initial matter, we note that none of Metropolitan Nashville's issues on appeal have been rendered moot by the current version of the Ordinance, which was enacted in early 2000. "[A] defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice." *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 (1982). Here, Metropolitan Nashville explicitly enacted the 2000 version in order to enforce the Ordinance pending this appeal. It has repeatedly expressed its intention to reenact those portions of the Ordinance judged unconstitutional by the district court at the earliest opportunity. Accordingly, we must now address the constitutionality of the following portions of the Ordinance: the definitions of "sexually oriented," "sexually oriented business/establishment," and "sexually oriented theater;" the civil disability provision; the disclosure provision; the fees provision; the buffer zone/ no touch provision; and the mechanisms provided for judicial review. We review a district court's decision to grant or deny a

No. 99-5071;          *Deja Vu of Nashville, Inc.,*   39
00-5284/5288/5881          *et al. v. The Metropolitan*
                          *Gov't of Nashville, et al.*

ordinance]. If they are to be subject to any future threat of injury from actions by the City, that threat will arise under the materially different procedures for renewals or revocations of licenses under [different provisions]." *Id.* I am not persuaded that, in the instant case, the procedures involved for revocation are not different from the procedures required for applying for initial licenses.

I find neither *Newsom v. Norris*, 888 F.2d 371 (6th Cir. 1989), nor *Dambrot v. Central Michigan University*, 55 F.3d 1177 (6th cir. 1995), both cited in the majority opinion, to be particularly helpful to plaintiffs on the issue of standing. *Newsom* involved a prison setting and alleged retaliation against inmate advisors. *Dambrot* involved a university's alleged discriminatory harassment policy in a discharge situation addressing the issue of freedom of speech. Neither case involved the type of expression here involved, held repeatedly to be subject to reasonable, narrowly drawn state regulation.

*FW/PBS* is a case much more analogous to this case than *Freedman*. The city ordinance in *FW/PBS* purported to regulate businesses similar to those operated by plaintiffs in this case. Plaintiffs were permitted to raise a facial challenge to the ordinance because special inspections and certificates of occupancy were demanded of sexually-oriented businesses. Such provisions are absent from the Metropolitan Nashville ordinance.

## II.  *PROMPT JUDICIAL REVIEW*

The Court in *Freedman* emphasized that the censorship of a film "puts an initial burden on the exhibition."[2] *Id.* Again, this is not the situation in the instant controversy. In the film

---

[2] "Films differ from other forms of expression." *Freedman*, 380 U.S. at 61.

38     *Deja Vu of Nashville, Inc.,*          No. 99-5071;
       *et al. v. The Metropolitan*          00-5284/5288/5881
       *Gov't of Nashville, et al.*

No. 99-5071;          *Deja Vu of Nashville, Inc.,*     7
00-5284/5288/5881          *et al. v. The Metropolitan*
                          *Gov't of Nashville, et al.*

interpreted *Freedman* broadly to apply to similar types of cases brought by adult "entertainment" operators and performers, such as plaintiffs. For example, *G & V Lounge, Inc. v. Michigan Liquor Control Commission*, 23 F.3d 1071 (6th Cir. 1994), cited by the majority, involved "threatened revocation" of a liquor license if topless dancing were to occur at an Inkster, Michigan bar and nightclub. *G & V Lounge, Inc.*, 23 F.3d at 1073. With that scenario and the evidence of threatened and imminent action by the state of license revocation, this court held that plaintiff operator had standing to bring a First Amendment claim, citing Supreme Court authority, including *Freedman*. Standing would be present in such a situation even if no revocation had taken place.

In the instant case, however, the plaintiffs make no allegation of threatened revocation of their licenses (or actual censorship). The majority recognizes Metropolitan Nashville's argument "that the plaintiff businesses and operators have no standing to challenge the license procedures because they have all been issued licenses." What it fails to recognize, however, is that no plaintiff has been threatened with revocation under the ordinance. Metropolitan Nashville concedes that "parties not yet affected by actual enforcement of the statute are allowed to challenge actions under the First Amendment." It is doubtful, however, particularly in light of *DLS, Inc. v. City of Chattanooga*, 107 F.3d 403 (6th Cir. 1997), that the plaintiffs, not operating under any threat of revocation, would have standing to challenge the constitutionality of procedures involved in the Ordinance at issue.

I would hold that plaintiffs have standing to challenge the substantive criteria for the issuance of licenses or permits, but do not have standing to challenge "the licensing scheme." *See DLS*, 107 F.3d at 413. In *DLS*, we reasoned that the plaintiffs lacked such standing because they "already have succeeded in obtaining a license under [the applicable

permanent injunction, including both its factual and legal conclusions, *de novo* when constitutional facts are at issue. *See Women's Medical Professionals Corp. v. Voinovich*, 130 F.3d 187, 192 (6th Cir. 1997). All other factual findings are reviewed for clear error. *See id.*

A.

First, we must examine the Ordinance's definitions of "sexually oriented," "sexually oriented business/establishment," and "sexually oriented theater" to determine whether they are unconstitutionally overbroad. A law is overbroad under the First Amendment if it "reaches a substantial number of impermissible applications" relative to the law's legitimate sweep. *New York v. Ferber*, 458 U.S. 747, 771 (1982). The overbreadth doctrine exists "to prevent the chilling of future protected expression." *Staley v. Jones*, 239 F.3d 769, 779 (6th Cir. 2001). Therefore, any law imposing restrictions so broad that it chills speech outside the purview of its legitimate regulatory purpose will be struck down. For the same reason, the plaintiffs have standing to challenge the Ordinance's overbreadth even though they do not dispute that the Ordinance applies to each of them. "The overbreadth doctrine constitutes an exception to traditional rules of standing" and allows claimants to assert the rights of parties not before the court. *Triplett Grille, Inc. v. City of Akron*, 40 F.3d 129, 135 (6th Cir. 1994).

We agree with the district court that the definition of "sexually oriented" is unconstitutionally overbroad. In relevant part, the Ordinance defines "sexually oriented" as "any exhibition of any motion pictures, films or videos depicting 'specified sexual activities' or 'specified anatomical areas.'" M.C.L. § 6.54.070(Y). "Specified anatomical areas" include "[l]ess than completely and opaquely covered" buttocks and female breasts. M.C.L. § 6.54.010(BB). Thus, any movie or video featuring a single shot of a person's nude or partially-covered buttocks or a woman's partially covered

8    *Deja Vu of Nashville, Inc.,*       No. 99-5071;
    *et al. v. The Metropolitan*     00-5284/5288/5881
    *Gov't of Nashville, et al.*

breast is a "sexually oriented" film under the Ordinance, irrespective of whether the film's content constitutes "adult entertainment" or causes the type of secondary effects, such as crime (sexual and nonsexual) and public health risks, that Metropolitan Nashville seeks to regulate. Because this definition could apply to a range of expression that does not cause the secondary effects that the Ordinance was aimed to prevent, it is overbroad.

We do not, however, find the definition of "sexually oriented business/establishment" overbroad. The Ordinance defines a "sexually oriented business/establishment" at Section 6.54.010(Z) as:

> Any commercial establishment which for a fee or incidentally to another service, regularly presents material or exhibitions distinguished or characterized by an emphasis on matter depicting, describing or relating to "specified sexual activities" or "specified anatomical areas" as defined in this section for observations by patrons therein.

Four subsections then follow this definition, defining the terms "sexually oriented bookstore," "sexually oriented nightclub," "sexually oriented theater," and "sexually oriented video store." M.C.L. §§ 6.54.010(Z)(1) - (4). If the "sexually oriented business/establishment" definition stood alone, we would find it unconstitutionally overbroad, as it could encompass such businesses as a hotel that offers its guests access to an adult cable channel. The record reflects, however, that a business will be subject to the Ordinance's licensing requirements only if the business satisfies both the "sexually oriented business/establishment" definition *and* one of the four subsections' definitions. When read in conjunction with the four subsections, the definition no longer sweeps too broadly.

No. 99-5071;     *Deja Vu of Nashville, Inc.,*   37
00-5284/5288/5881     *et al. v. The Metropolitan*
    *Gov't of Nashville, et al.*

---

## CONCURRING IN PART, DISSENTING IN PART

---

HARRY W. WELLFORD, Circuit Judge, concurring in part and dissenting in part.

I concur in the Chief Judge's opinion in this difficult case in most respects. I write separately to set out my views with respect to part II.F dealing with standing and prompt judicial review. The majority found that prompt judicial review is "required by *Freedman* [*v. Maryland*, 380 U.S. 51 (1965)]." *Supra* at 26. *Freedman*, however, involves a very different set of circumstances from the present controversy, because that case presented a First Amendment challenge to the "Maryland motion picture censorship statute."[1] *Id.* at 52. The Supreme Court pointed out that under the Maryland law in question "there is *no* statutory provision for judicial participation in the procedure which bars a film, *nor even assurance of prompt judicial review*." *Id.* at 55 (emphasis added). Furthermore, the Court recognized the unique nature of the film industry, stating that "a censorship system for motion pictures presents *peculiar dangers* to constitutionally protected speech." *Id.* at 57 (emphasis added). Our present case, of course, does not involve freedom of speech in a film, but freedom of expression in a sexually-oriented place of business.

### I. STANDING

I would not hold *Freedman* controlling on the issue of standing because of the circumstances in that case are entirely different from those in the instant controversy. This court has

---

[1] Indeed, in *Freedman*, the state conceded "that the picture [at issue] does not violate the statutory standards." *Freedman*, 380 U.S. at 52.

36   *Deja Vu of Nashville, Inc.,*          No. 99-5071;
      *et al. v. The Metropolitan*          00-5284/5288/5881
      *Gov't of Nashville, et al.*

IV.

For the foregoing reasons, we AFFIRM the district court's finding that the definition of "sexually oriented" is unconstitutional under the First Amendment. We further AFFIRM the district court's finding that the definitions of "sexually oriented business/establishment" and "sexually oriented theater," and the no touch/buffer zone provision satisfy the First Amendment. Finally, we AFFIRM the district court's refusal to hear Metropolitan Nashville's Rule 60(b) motion. We REVERSE, however, the district court's finding that the civil disabilities provision, the disclosure provision, and the fee amounts are unconstitutional. We further REVERSE the district court's finding that the Ordinance's judicial review procedures satisfy the First Amendment. Upon remand, the district court should maintain the injunction until Metropolitan Nashville satisfies it that the constitutional problems with the Ordinance's definition of "sexually oriented" and its judicial review procedures have been corrected.

No. 99-5071;          *Deja Vu of Nashville, Inc.,*   9
00-5284/5288/5881          *et al. v. The Metropolitan*
                           *Gov't of Nashville, et al.*

For the same reason, we find no constitutional problem with the Ordinance's definition of "sexually oriented theater," the only subsection definition challenged by the plaintiffs on appeal. "Sexually oriented theater," defined in Section 6.54.010(Z)(3), means:

> [A]n enclosed area, not including a booth, regularly used for presenting films, motion pictures, videocassettes, slides, or other photographic reproductions or other material depicting, describing, or relating to "specified sexual activities" or "specified anatomical areas," as defined in this section, for observation by patrons therein.

"Specified sexual activities" include sexual intercourse and fondling of buttocks or breasts. *See* M.C.L. § 5.43.010(CC). A significant number of mainstream movies depict people fondling breasts or buttocks, and an even larger number "relate to" sex. Again, the risk that this definition might chill a range of protected speech would require us to find it unconstitutionally overbroad if it stood alone. The additional requirement of being a "sexually oriented business/establishment," however, narrows the Ordinance's application to those theaters that regularly present material distinguished or characterized by an emphasis on sex acts or particular body parts. Again, reading the definitions together saves the parts from overbreadth.[2]

---

[2] We note that these constitutional issues would never have arisen had the Ordinance been written more clearly. Section 6.54.010(Z) could have simply stated that its definition must be read in conjunction with its subsections. Alternatively, the Ordinance could have defined "sexually oriented business/establishment" at Section 6.54.010(Z) as "any one of the following businesses," and then listed the four businesses currently defined in the subsections (with the necessary limiting language incorporated into each business's definition). Whatever the difficulties inherent in writing laws, it is not too much to ask that municipalities carefully draft legislation intended to regulate protected activities.

10   *Deja Vu of Nashville, Inc.,*   No. 99-5071;
   *et al. v. The Metropolitan*   00-5284/5288/5881
   *Gov't of Nashville, et al.*

Finally, even though we find the Ordinance's definition of "sexually oriented" overbroad, we must, if possible, give effect to the Ordinance's severability clause so as not to invalidate the entire act. *See Moore v. Fowinkle*, 512 F.2d 629, 637 (6th Cir. 1975). By including a severability clause, found at Section 6.54.170, Metropolitan Nashville created a presumption that it did not intend the statute's validity to hinge on any constitutionally infirm provision. *See Immigration & Naturalization Serv. v. Chadha*, 462 U.S. 919, 932 (1983). We find that the definition of "sexually oriented" can easily be severed from the Ordinance without having any impact on the licensing scheme. In fact, we are a bit confused as to why this definition had to be litigated at all, as Metropolitan Nashville argues strenuously in its brief that it is superfluous. Our independent review of the Ordinance reveals that, indeed, the phrase "sexually oriented" is never used but in conjunction with some other word that has its own definition. *See generally* § 6.54.010 (containing definitions of "sexually oriented films," "sexually oriented theaters," and "sexually oriented nightclubs," to name a few). For whatever reason, Metropolitan Nashville saw fit to have us decide whether this apparently meaningless term must be removed from its Ordinance. We have and it must.

### B.

Metropolitan Nashville next appeals the district court's decision that the Ordinance's "civil disabilities provisions" violate the First Amendment. Under those provisions, no individual license or permit applicant who has had a misdemeanor conviction for a crime of a sexual nature may receive a license or permit for two years following the date of the conviction.[3]   *See* M.C.L. §§ 6.54.050(B)(2)(a);

---

[3]The following constitute "crimes of a sexual nature" under the Ordinance: "the crimes of rape, aggravated rape, aggravated sexual assault, public indecency, statutory rape, rape of a child, sexual

No. 99-5071;   *Deja Vu of Nashville, Inc.,*   35
00-5284/5288/5881   *et al. v. The Metropolitan*
   *Gov't of Nashville, et al.*

ineffectual provision will not save the statute. Under these circumstances, we cannot give effect to the severability clause, but must enjoin enforcement of the entire Ordinance.

### III.

In the first of two final matters, the plaintiffs ask us to vacate the magistrate's grant of a protective order to Metropolitan Nashville with regard to the plaintiffs' discovery requests dealing with Metropolitan Nashville's basis for believing sexually oriented businesses cause "secondary effects." The plaintiffs concede, however, that although they moved for the district court to review the magistrate's decision, the court did not rule on the motion before issuing its decisions enjoining the Ordinance's enforcement. We decline to rule on the propriety of the magistrate's order before the district court has a chance to review it.

Finally, we briefly address Metropolitan Nashville's argument that the district court erred in finding that its appeal to this Court divested the district court of jurisdiction to hear its Rule 60(b) motion to dissolve the permanent injunction. The filing of an appeal with this Court generally divests a district court of jurisdiction over the case. *See First Nat'l Bank of Salem, Ohio v. Hirsch*, 535 F.2d 343, 345 (6th Cir. 1976). In the district court's discretion, however, it may enter an order stating that it is disposed to grant a Rule 60(b) motion, which would allow the requesting party to move this Court to remand the case, thereby once again vesting jurisdiction in the district court. *See id.* at 346. Nonetheless, Metropolitan Nashville concedes that the district court is under no obligation to issue such an order, and in fact characterized this appeal as a "procedural misstep" at oral argument. We agree. The district court did not abuse its discretion in refusing to rule on Metropolitan Nashville's Rule 60(b) motion following Metropolitan Nashville's appeal to this Court.

34   *Deja Vu of Nashville, Inc.,*          No. 99-5071;
     *et al. v. The Metropolitan*          00-5284/5288/5881
     *Gov't of Nashville, et al.*

where "a well-understood and *uniformly applied* practice has developed that has virtually the force of a judicial construction." *City of Lakewood*, 486 U.S. at 770 n.11 (emphasis added). In the absence of such strong evidence, "[w]e can neither presume that municipal officials will act in good faith and respect a speaker's First Amendment rights, nor read a requirement into an ordinance that is not fairly and evidently present." *Nightclubs, Inc.*, 202 F.3d at 891 n.6. A "uniformly applied" practice is simply not the same as a "generally" applied one. Because the chancery court clerk's affidavit does not present such strong evidence, and because the record contains no evidence as to the circuit court's practices, we cannot agree with the district court that the Constitution's requirements have been satisfied by this proof.

Second, the affidavit purports only to describe the average length of time it takes to "process" all petitions for a writ of certiorari. It says nothing about whether the court is obligated to grant the writ at all, and therefore, it fails to address the biggest problem with the Ordinance's judicial review provision. Without some affirmative evidence showing that every writ of certiorari will be granted, we find that the Ordinance's judicial review provisions do not guarantee prompt judicial review, as required by the First Amendment.[8] The lack of a judicial review provision renders the entire statute facially unconstitutional, and therefore, severing the

---

[8]The Ordinance does preserve the status quo by allowing existing businesses to continue to operate until an adjudication on the merits and by issuing a temporary license to new businesses if the court fails to rule within forty days of the filing of an appeal. *See* M.C.L. 6.54.040(E)(3) and (4); *see also* M.C.L. 6.54.070(D)(3) and (4) (applying same rules to permit applicants). Merely preserving the status quo, however, is not sufficient to satisfy *Freedman*. The decision whether or not to grant a license must still be made within a specified, brief period, and the licensing scheme "must *assure* a prompt judicial decision." *See Freedman*, 380 U.S. at 59 (emphasis added). The Ordinance's discretionary appeals procedure fails to satisfy these separate requirements.

---

No. 99-5071;          *Deja Vu of Nashville, Inc.,*   11
00-5284/5288/5881          *et al. v. The Metropolitan*
                    *Gov't of Nashville, et al.*

6.54.080(A)(2)(a). No applicant who has had a felony conviction for a crime of a sexual nature may receive a license or permit for five years following the date of the conviction. *See* §§ 6.54.050(B)(2)(b); 6.54.080(A)(2)(b).

To satisfy Article III's standing requirement, (1) a plaintiff must have suffered some actual or threatened injury due to the alleged illegal conduct of the defendant; (2) the injury must be "fairly traceable" to the challenged action; and (3) there must be a substantial likelihood that the relief requested will redress or prevent the plaintiff's injury. *See Coyne v. American Tobacco Co.*, 183 F.3d 488, 494 (6th Cir. 1999). The Supreme Court has further defined the injury-in-fact requirement by stating that a plaintiff must show "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).

Plaintiffs Deja Vu and Michael Butler, Deja Vu's former Vice-President, are the only Deja Vu plaintiffs who allege they have standing to challenge the civil disabilities provisions because Butler was convicted of statutory rape in 1995. Although they acknowledge Butler no longer works for Deja Vu, they claim that he quit his job only because Deja Vu was forced to seek a license in 1999, after the district court dissolved the first preliminary injunction and denied plaintiffs a stay pending its decision on their motion for a second preliminary injunction. Therefore, Deja Vu and Butler contend they were forced to choose between the "Scylla of

---

exploitation of a minor, indecent exposure, prostitution, patronizing prostitution, promoting prostitution, obscenity, or crimes committed in a jurisdiction other than Tennessee which, if committed in this state, would have constituted the crimes listed above. In the event that a felony from a jurisdiction other than Tennessee is not a named felony in this state, the elements of the offense shall be used to determine what classification the offense is given." M.C.L. § 6.54.010(D).

12   *Deja Vu of Nashville, Inc.,*       No. 99-5071;
     *et al. v. The Metropolitan*    00-5284/5288/5881
     *Gov't of Nashville, et al.*

intentionally flouting state law and the Charybdis of forgoing what [they believed] to be constitutionally protected activity." *Steffel v. Thompson*, 415 U.S. 452, 462 (1974). They argue that they should not be denied standing to challenge the civil disabilities provisions merely because Butler no longer works for Deja Vu, when it was the enforcement of that very provision that forced Butler to resign.

Although attractive, this argument has no merit under standing jurisprudence. Because Deja Vu does not currently employ anyone who could arguably be subjected to the disabilities provisions, any threat it alleges with regard to those provisions is, by definition, hypothetical. Hypothetical injury does not equal injury-in-fact. *See Lujan*, 504 U.S. at 560. Moreover, Deja Vu did not rehire Butler as Vice-President when the district court enjoined enforcement of the civil disabilities provisions, nor does it allege any plans to do so should we uphold that injunction. Similarly, Butler does not allege he would seek such a job were it not for the disabilities provisions. Therefore, neither plaintiff has suffered a harm likely to be redressed by a favorable decision. *See Coyne*, 183 F.3d at 494 (citing *Valley Forge Christian Coll. v. Americans United for Separation of Church & State*, 454 U.S. 464, 472 (1982)). Because none of the other individual plaintiffs alleged that the civil disability provisions rendered them ineligible to receive a permit, we agree with Metropolitan Nashville that none of the Deja Vu plaintiffs have standing to challenge the civil disabilities provisions.

We find, however, that the Pendergrass plaintiffs do have standing to challenge the provisions. At the time the district court ruled on this issue, Jerry Pendergrass was an officer, a director, and the sole shareholder of the 822 Corporation. Pendergrass was convicted of a misdemeanor obscenity offense on May 22, 1997, and he was required to apply for a license by March 15, 1999, within two years of the date of his conviction. Because of the civil disabilities provisions, Pendergrass, and consequently the 822 Corporation, was

No. 99-5071;        *Deja Vu of Nashville, Inc.,*   33
00-5284/5288/5881     *et al. v. The Metropolitan*
                    *Gov't of Nashville, et al.*

an aggrieved applicant that a court will hear and decide the merits of her claim, as required by *Freedman*.[7]

Metropolitan Nashville also argues that the plaintiffs' concern that the courts may not promptly determine whether or not to grant the writ petition is unfounded. For support, Metropolitan Nashville cites to an affidavit presented to the district court from the Clerk and Master for the Chancery Courts of Davidson County, stating that "[g]enerally, our office processes all petitions for a writ of certiorari . . . within two days of the filing of the petition." This anecdotal affidavit, however, is insufficient to establish that aggrieved applicants are *guaranteed* prompt judicial review.

First, the affidavit does not address Davidson County's circuit courts, where the Ordinance also directs that an aggrieved applicant's appeal may lie. Therefore, the record is completely absent of any evidence as to the turn-around time of petitions filed with the circuit court, and it was clearly erroneous of the district court to find otherwise. More importantly, the affidavit only avers the chancery court's *general* practice. The Constitution requires more. "[A]ny limiting construction must 'be made explicit by textual incorporation, binding judicial or administrative construction, or well-established practice.'" *Nightclubs, Inc.*, 202 F.3d at 891 n.6 (citing *City of Lakewood v. Plain Dealer Publ'g Co.*, 486 U.S. 750, 700 (1988)). A well-established practice is one

---

[7]Theoretically, for instance, an aggrieved applicant could file a § 1983 suit against the Board and its members. Although such a suit would not provide complete relief, as the applicant would be foreclosed from "speaking" until a final adjudication, it is a far cry from the facts of *Johnson*, where the court found the erroneous suppression of evidence would force Metropolitan Nashville to drop its criminal charges against the defendant and that double jeopardy would prohibit the city from filing new charges. In that context, Metropolitan Nashville would have literally had no legal recourse if the court had denied its petition for a writ of certiorari, and it is therefore at least potentially distinguishable from this case.

32    *Deja Vu of Nashville, Inc.,*          No. 99-5071;
      *et al. v. The Metropolitan*          00-5284/5288/5881
      *Gov't of Nashville, et al.*

from the date the metropolitan government was served with a petition for a writ of certiorari.[6]

Tennessee state law requires that if an appeal is taken from an administrative decision barring an applicant from engaging in First Amendment activities, "the court shall hear the matter and issue its decision within forty (40) days of the court granting the writ of certiorari." T.C.A. § 27-9-111 (Michie 1999). The plaintiffs argue that these provisions fail to comply with the first two *Freedman* safeguards. We agree.

"Whether the common law writ of certiorari will issue is a matter of discretion. It is not issued as a matter of right." *Boyce v. Williams*, 389 S.W.2d. 272, 277 (Tenn. 1965). Thus, the Ordinance, in requiring that aggrieved applicants proceed to court via a discretionary route, fails to guarantee a "final judicial adjudication on the merits," as required under *Freedman*'s first safeguard. Metropolitan Nashville points to *State v. Johnson*, 569 S.W.2d 808 (Tenn. 1978), for support that Tennessee courts will not deny a writ in this context. *See id.* at 815 (finding that writs should issue where denial of the writ is "tantamount to the denial to either party of a day in court"). Even that case, however, reiterates the rule that "certiorari is a discretionary writ." *Id.* at 814 (noting that whether a lack of appellate remedy exists is "critical" for determining whether to grant a writ). Because Metropolitan Nashville has failed to demonstrate that the denial of a writ would be tantamount to the denial to an applicant of a day in court, we cannot agree that this discretionary writ guarantees

---

[6] Although this language could be read as authorizing two avenues for appeal, a direct appeal by which Metropolitan Nashville does not have to file the record of all proceedings within ten days, and an appeal via a common law writ of certiorari whereby Metropolitan Nashville must timely file the record, Metropolitan Nashville insisted at oral argument that the provision authorizes only an appeal via the common law writ.

No. 99-5071;          *Deja Vu of Nashville, Inc.,*   13
00-5284/5288/5881          *et al. v. The Metropolitan*
                          *Gov't of Nashville, et al.*

ineligible to receive an operating license. Accordingly, both parties have standing to challenge those provisions.

The Pendergrass plaintiffs' challenge has not been mooted merely because over two years have passed and his business now possesses an operating license, as this case falls squarely within the "capable of repetition, yet evading review" exception to mootness. *See Weinstein v. Bradford*, 423 U.S. 147, 149 (1975). Under this exception, the Pendergrass plaintiffs must show that 1) the challenged action will be of a duration too short to be fully litigated prior to its cessation or expiration, and 2) there is a "reasonable expectation that the same complaining party will be subjected to the same action again." *Id.* Even if an applicant seeks a license the day after his or her misdemeanor conviction, that still leaves only two years for the applicant to exhaust the Ordinance's application and appeal procedures and fully litigate the claim in the federal courts. As a practical matter, this cannot be done. Additionally, because the range of disabling sex crimes is relatively large, and because, as Metropolitan Nashville itself points out, it is reasonably foreseeable that someone with a sex crime history will choose to work for or be involved with a sexually oriented business, there is a reasonable probability that a future person connected with the 822 Corporation will have a criminal history that renders the Corporation ineligible for a license under the civil disabilities provisions. Therefore, we will proceed to the merits of the plaintiffs' claim.

"[N]ude dancing of the type at issue here is expressive conduct," which falls "within the outer ambit of the First Amendment's protection." *City of Erie v. Pap's A.M.*, 529 U.S. 277, 289 (2000) (plurality opinion). Therefore, any ordinance regulating nude dancing must be analyzed to ensure it does not unduly impair the exercise of First Amendment rights. The level of scrutiny we apply depends on the type of regulation we address. For instance, if the challenged law is "content based," that is, intended to impact speech, the law

14   *Deja Vu of Nashville, Inc.,*      No. 99-5071;
*et al. v. The Metropolitan*      00-5284/5288/5881
*Gov't of Nashville, et al.*

must survive strict scrutiny. *See Turner Broad. Sys., Inc. v. FCC*, 512 U.S. 622, 642 (1994). "In contrast, regulations that are unrelated to the content of speech are subject to an intermediate level of scrutiny," one which was first enunciated as a four-step test in *United States v. O'Brien*, 391 U.S. 367, 377 (1968). *Turner Broad.*, 512 U.S. at 642. Systems of prior restraint will be upheld only if they provide for prompt judicial review of all decisions denying the right to speak, while also passing the appropriate level of scrutiny. *See Freedman v. State of Maryland*, 380 U.S. 51, 58-59 (1965).

The plaintiffs argue that the Ordinance should be subjected to strict scrutiny because the civil disabilities provisions amount to an unlawful prior restraint in violation of the First Amendment. "A 'prior restraint' exists when speech is conditioned upon the prior approval of public officials," and any system of prior restraint carries a heavy presumption against its validity. *Nightclubs, Inc. v. City of Paducah*, 202 F.3d 884, 889 (6th Cir. 2000). Although the plaintiffs are correct in asserting that the Ordinance constitutes a system of prior restraint, that argument more properly applies to our examination of the Ordinance's mechanisms for providing prompt judicial review, *see* Part II. F, *infra,* rather than our decision of which level of constitutional scrutiny to apply. What the plaintiffs actually, though obliquely, argue here is that the Ordinance is content-based, and thus must withstand strict scrutiny. *See, e.g., Turner Broad.*, 512 U.S. at 642. Metropolitan Nashville responds that the Ordinance is a content-neutral regulation aimed at redressing the secondary effects of sexually oriented businesses that must satisfy the less-demanding four-part test of *O'Brien.*

We have previously recognized that ordinances aimed at regulating adult entertainment businesses constitute content-based regulations, but that 'a distinction may be drawn between adult [businesses] and other kinds of [businesses] without violating the government's paramount obligation of

No. 99-5071;      *Deja Vu of Nashville, Inc.,*   31
00-5284/5288/5881      *et al. v. The Metropolitan*
*Gov't of Nashville, et al.*

constitutional infirmity. *See id.* at 58-59. First, the decision whether or not to grant a license must be made within a specified, brief period, and the status quo must be preserved pending a final judicial determination on the merits. *See id.* at 59. Second, the licensing scheme "must also assure a prompt judicial decision, to minimize the deterrent effect of an interim and possibly erroneous denial of a license." *Id.* Third, the licensing scheme must place the burden of instituting judicial proceedings and proving that expression is unprotected on the licensor rather than the exhibitor. *See id.* at 58. Licensing schemes in a city ordinance regulating sexually oriented businesses constitute a prior restraint that must incorporate at least the first two *Freedman* procedural safeguards. *See FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 229-30 (1990) (plurality opinion of O'Connor, J.);[5] *see also Nightclubs, Inc.*, 202 F.3d at 890; *East Brooks Books, Inc.*, 48 F.3d at 224.

Sections 6.54.040(E) and 6.54.070(D) of the Ordinance provide the procedures for obtaining relief from the denial of a license or permit:

Any denial of an application for a license may be immediately appealed to the circuit or chancery courts of Davidson County. The metropolitan department of law may institute proceedings for a declaratory judgment. If the applicant chooses to appeal by filing a writ of certiorari, then the metropolitan government shall file the record of all proceedings with the court within ten days

---

[5]Three justices held only the first two *Freedman* safeguards applied, three justices would have applied all three, *see id.* at 238-39 (Brennan, J., concurring in the judgment), and three more would not have applied any. *See id.* at 244 (White, J., concurring in part and dissenting in part); *see also id.* at 253 (Scalia, J., concurring in part and dissenting in part). Accordingly, at a minimum, we must apply the first two *Freedman* safeguards.

30  *Deja Vu of Nashville, Inc.,*          No. 99-5071;
    *et al. v. The Metropolitan*          00-5284/5288/5881
    *Gov't of Nashville, et al.*

findings of fact, or when it improperly applies the law or uses an erroneous legal standard." *Performance Unlimited, Inc. v. Questar Publishers, Inc.*, 52 F.3d 1373, 1378 (6th Cir. 1995). "A factual or legal error alone may be sufficient to establish that the court abused its discretion in making its final determination." *Id.* (internal punctuation and citations omitted).

A district court must consider four factors when determining whether to grant or deny a preliminary injunction: (1) the plaintiff's likelihood of success on the merits; (2) whether the plaintiff may suffer irreparable harm absent the injunction; (3) whether granting the injunction will cause substantial harm to others; and (4) the impact of an injunction upon the public interest. *See Dixie Fuel Co.*, 171 F.3d at 1059-60. In First Amendment cases, the first factor will often be determinative. *See Connection Distrib. Co. v. Reno*, 154 F.3d 281, 288 (6th Cir. 1998). This is because the Supreme Court has recognized that even minimal infringement upon First Amendment values constitutes irreparable injury. *See Newsom*, 888 F.2d at 378. Additionally, if the plaintiff shows a substantial likelihood that the challenged law is unconstitutional, no substantial harm to others can be said to inhere in its enjoinment. *See Connection Distrib.*, 154 F.3d at 288. Moreover, "it is always in the public interest to prevent violation of a party's constitutional rights." *G & V Lounge, Inc.*, 23 F.3d at 1079. Accordingly, we shall focus our attention on the first factor.

A "prior restraint" exists when the exercise of a First Amendment right depends on the prior approval of public officials. *See Nightclubs, Inc.*, 202 F.3d at 889 (citing *Southeastern Promotions, Ltd. v. Conrad*, 420 U.S. 546, 553 (1975)). "Any system of prior restraints comes to this Court bearing a heavy presumption against its constitutional validity." *Freedman*, 380 U.S. at 57. In *Freedman*, a unanimous Supreme Court found that three procedural safeguards were required for a prior restraint scheme to avoid

No. 99-5071;          *Deja Vu of Nashville, Inc.,*   15
00-5284/5288/5881          *et al. v. The Metropolitan*
                          *Gov't of Nashville, et al.*

neutrality" when the government seeks to regulate only the secondary effects of erotic speech, and not the speech itself. *Richland Bookmart, Inc. v. Nichols*, 137 F.3d 435, 440 (6th Cir. 1998). To withstand constitutional scrutiny, then, (1) the Ordinance must have been enacted within Metropolitan Nashville's constitutional power; (2) the Ordinance must further a substantial governmental interest; (3) the interest must be unrelated to the suppression of speech; and (4) the Ordinance may pose only an "incidental burden on First Amendment freedoms that is no greater than is essential to further the government interest." *East Brooks Books, Inc. v. City of Memphis*, 48 F.3d 220, 226 (6th Cir. 1995) (citing *O'Brien*, 391 U.S. at 377).

The parties agree that Metropolitan Nashville validly enacted the Ordinance. Additionally, Metropolitan Nashville's stated interests in reducing crime, open sex, and the solicitation of sex are substantial. *See Richland Bookmart, Inc.*, 137 F.3d at 440. Moreover, regulations aimed at redressing the secondary effects of the sex industry are unrelated to the suppression of erotic speech. *See East Brooks Books, Inc.*, 48 F.3d at 226. Therefore, we need only determine whether the Ordinance's civil disabilities provisions constitute merely an incidental burden on the plaintiffs' First Amendment rights that is essential to furthering Metropolitan Nashville's stated interest in battling the secondary effects of the sex industry.

The Supreme Court has recently noted that "crime and other public health and safety problems are caused by the presence of nude dancing establishments . . . ." *Pap's A.M.*, 529 U.S. at 300. The Ordinance's civil disabilities provisions serve to weed out those applicants most likely to engage in the type of criminal behavior that the Ordinance seeks to redress by temporarily disqualifying those who have recently committed such acts from working for sexually oriented establishments, or alternatively, from declaring any sexually oriented establishment closely associated with such an

16   *Deja Vu of Nashville, Inc.,*                No. 99-5071;
     *et al. v. The Metropolitan*         00-5284/5288/5881
     *Gov't of Nashville, et al.*

individual ineligible to operate. In light of the temporary nature of the ban and the narrow reach of the provisions (applying only to those who have committed a felony sex crime within the last five years or a misdemeanor sex crime within the last two years), we do not find that these provisions violate the Constitution.

Contrary to the plaintiffs' arguments, our holding in *City of Paducah v. Investment Entm't, Inc.*, 791 F.2d 463 (6th Cir. 1986), does not control this case. In *City of Paducah*, we invalidated a municipal regulation that revoked all business licenses and permits from those businesses whose employees had distributed or exhibited obscene material. *See City of Paducah,* 791 F.2d at 464. In that case, however, we explicitly found that the purpose of the challenged portion of the regulation was "to control future expression by businesses that have been subjected to the nuisance abatement procedure." *Id.* at 470. In contrast, we find here that the Ordinance's civil disabilities provisions exist to combat the sex crimes connected with sexually oriented establishments by temporarily prohibiting those recently convicted of such crimes from employment with those establishments. Because both the Ordinance and the civil disabilities provisions are unrelated to speech, we are faced with a different issue than that decided in *City of Paducah*. Furthermore, because *City of Paducah* was a "prior restraint" case, it was concerned with whether the regulation at issue provided sufficient mechanisms for prompt judicial review. *See id.* We agree that the instant Ordinance must provide for prompt judicial review, and that such review must encompass any findings of ineligibility pursuant to the civil disabilities provisions. *See* Part II. F, *infra.* Nothing in the civil disabilities provisions themselves, however, renders them facially unconstitutional, and we decline to tie the hands of local governments by extending *City of Paducah's* reasoning to those regulations aimed only at redressing the secondary effects of the sex entertainment industry.

No. 99-5071;              *Deja Vu of Nashville, Inc.,*   29
00-5284/5288/5881        *et al. v. The Metropolitan*
                         *Gov't of Nashville, et al.*

(6th Cir. 1999) (internal quotation marks and citations omitted). In determining whether the entertainers' claim is ripe, we consider "whether the issues are fit for judicial decision as well as the hardship to the challenging party resulting from potential delay in obtaining judicial decision." *Id.* at 1058.

Metropolitan Nashville claims that the entertainers are not under any threat with regard to the Ordinance because the entertainers have not yet sought a permit. We disagree. The entertainers join with the other plaintiffs in challenging the Ordinance's judicial review provisions. Because this is a purely legal issue, and because, as already demonstrated, the plaintiffs have standing to raise it, the issue is fit for a judicial decision. Moreover, as Metropolitan Nashville acknowledges in its brief, "[p]arties not yet affected by the actual enforcement of the statute are allowed to challenge actions under the First Amendment in order to ensure that an overbroad statute does not act to 'chill the exercise of free speech and expression,' a constitutionally protected right." Gov. Br. at 12 (citing *Dambrot v. Central Mich. Univ.*, 55 F.3d 1177, 1182 (6th Cir. 1995)). The plaintiffs facially challenge the Ordinance's overbreadth, alleging that the lack of prompt judicial review vests too much discretion in the Board. By Metropolitan Nashville's own admission, then, their claim is ripe for review.

2.

We now turn to the merits of the plaintiffs' claim that the Ordinance constitutes a system of prior restraint, and that it fails to guarantee the requisite prompt judicial review of license/permit denials and revocations. We review a district court's order dissolving a preliminary injunction for an abuse of discretion, reviewing *de novo* where the dissolution is based upon a legal conclusion. *See Reese v. City of Columbus*, 71 F.3d 619, 622 (6th Cir. 1995). "A district court abuses its discretion when it relies on clearly erroneous

28  *Deja Vu of Nashville, Inc.,*  No. 99-5071;
*et al. v. The Metropolitan*  00-5284/5288/5881
*Gov't of Nashville, et al.*

have no effect on the potential threat that [the plaintiffs] face under renewal or revocation proceedings." *See DLS*, 107 F.3d at 414.

It is immaterial that Metropolitan Nashville has not yet sought to suspend or revoke the plaintiffs' licenses. A mere threat to First Amendment interests is a legally cognizable injury. *See Newsom v. Norris*, 888 F.2d 371, 378 (6th Cir. 1989). "In the area of freedom of expression, it is well established that one has standing to challenge a statute on the ground that it delegates overly broad licensing discretion to an administrative office . . . whether or not he applied for a license." *Freedman*, 380 U.S. at 56. Arguing that a statute lacks sufficient procedural safeguards is one way to allege overly broad licensing discretion.

> [Plaintiff's] argument is that, because the apparatus operates in a statutory context in which judicial review may be too little and too late, the . . . statute lacks sufficient safeguards for confining the censor's action to judicially determined constitutional limits, and therefore contains the same vice as a statute delegating excessive administrative discretion.

*Id.* at 57. "By the same token, . . . Plaintiff does not have to wait until his license is revoked to have standing to challenge the allegedly overbroad licensing scheme that would allow its revocation." *See G & V Lounge, Inc. v. Michigan Liquor Control Comm'n*, 23 F.3d 1071, 1075 (6th Cir. 1994). Therefore, the plaintiff businesses and operators have standing to raise their facial challenge to the Ordinance.

Additionally, we find this case ripe for review. Ripeness requires that the "injury in fact be certainly impending." *NRA*, 132 F.3d at 280 (citation omitted). The doctrine exists "to ensure that courts decide only existing, substantial controversies, not hypothetical questions or possibilities." *Dixie Fuel Co. v. Comm'r of Soc. Sec.*, 171 F.3d 1052, 1057

No. 99-5071;  *Deja Vu of Nashville, Inc.,*  17
00-5284/5288/5881  *et al. v. The Metropolitan*
*Gov't of Nashville, et al.*

## C.

Because the district court found the Ordinance's civil disabilities provisions unconstitutional, it also invalidated its "disclosure provisions" which require that applicants provide certain information in order to conduct a background check into each applicant's criminal history. The disclosure provisions require that license and permit applicants divulge such personal information as full name, height, weight, hair color, eye color, date of birth, current residential address, and all residential addresses for the prior three years. *See* §§ 6.54.040(A)(5)(a), (b), and (c); 6.54.070 (A)(4)(a), (b), (c), and (d). Additionally, applicants must provide their fingerprints and two portrait photographs to facilitate the background check, which the Metropolitan Police Department conducts. *See* §§ 6.54.040(A)(5)(g); 6.54.070(A)(4)(g). Because each plaintiff either has or will have to apply for either a permit or a license, all are required to provide this information to the Board. Accordingly, all the plaintiffs have standing to challenge this provision.

The Ordinance states that the required disclosures are "for the purpose of facilitating the police investigation into the applicant's criminal background regarding crimes of a sexual nature." *See* M.C.L. § 6.54.040(A)(5)(c); M.C.L. § 6.54.070(A)(4)(c); M.C.L. § 6.54.070(A)(4)(d). Because this purpose is "unrelated to the suppression of expression," we again apply the four-part *O'Brien* test to determine whether the disclosure provisions are unconstitutional. *Pap's A.M.*, 529 U.S. at 289.

As stated above, *O'Brien* requires us to determine whether Metropolitan Nashville enacted the disclosure provisions (1) within its constitutional power, (2) to further a substantial governmental interest that is (3) unrelated to the suppression of speech, and whether (4) the provisions pose only an "incidental burden on First Amendment freedoms that is no greater than is essential to further the government interest."

18    *Deja Vu of Nashville, Inc.,*          No. 99-5071;
      *et al. v. The Metropolitan*          00-5284/5288/5881
      *Gov't of Nashville, et al.*

*East Brooks Books, Inc.*, 48 F.3d at 226. Here, Metropolitan Nashville legitimately enacted the disclosure provisions in order to facilitate the background check. In addition, the required disclosures ensure continuing compliance with the Ordinance's licensing and permitting requirements. Although the plaintiffs point to testimony by Metropolitan Police Department Vice Squad Captain Bawcum that only a person's name and date of birth are used to run a background check, they do not argue that the required disclosures do not further Metropolitan Nashville's substantial governmental interest in eradicating the secondary effects of sexually oriented businesses.[4] "States are not required to convince the courts of the correctness of their legislative judgments. Rather, 'those challenging the legislative judgment must convince the court that the legislative facts on which the classification is apparently based could not reasonably be conceived to be true by the governmental decision maker.'" *Borman's, Inc. v. Mich. Prop. & Cas. Guar. Assoc.*, 925 F.2d 160, 162 (6th Cir. 1991) (quoting *Vance v. Bradley*, 440 U.S. 93, 111 (1979)). The plaintiffs have failed to convince us that requiring identifying information as part of the application process does not facilitate enforcement of the Ordinance's provisions (for instance, by assuring that the entertainer displaying the permit matches the physical description contained in the applicant's file). The provisions thus satisfy the first, second, and third parts of the *O'Brien* test.

---

[4] Simply because Metropolitan Nashville codified only its interest in facilitating the background checks as the justification for the required disclosures, we are not prohibited from taking into account other interests the disclosures may serve. "Our appropriate focus is not an empirical inquiry into the actual intent of the enacting legislature, but rather the existence or not of a current governmental interest in the service of which the challenged application of the statute may be constitutional." *Barnes v. Glen Theatre, Inc.*, 501 U.S. 560, 582 (1991) (Souter, J., concurring in the judgment).

No. 99-5071;          *Deja Vu of Nashville, Inc.,*    27
00-5284/5288/5881          *et al. v. The Metropolitan*
                          *Gov't of Nashville, et al.*

that issue, however, we must address Metropolitan Nashville's argument that the plaintiffs have failed to present us with a justiciable controversy. We review issues of Article III justiciability *de novo*. *See NRA v. Magaw*, 132 F.3d 272, 278 (6th Cir. 1997).

1.

Metropolitan Nashville argues that the plaintiff businesses and operators have no standing to challenge the licensing procedures because they have all been issued licenses. For support, Metropolitan Nashville cites *DLS*, which held that a business and its owner did not have standing to challenge a licensing procedure under which they had already received licenses. *See DLS*, 107 F.3d at 413.

> If they are to be subject to any future threat of injury from actions by the City, that threat will arise under the materially different procedures for renewals or revocations of licenses. . . . Therefore, they cannot demonstrate that their challenge to the licensing procedures satisfies the three core requirements for standing under Article III.

*Id.*

Metropolitan Nashville misunderstands the plaintiffs' argument. Here, plaintiffs have raised a facial challenge claiming that the Ordinance's procedures for reviewing Board decisions fail to provide for prompt judicial review as required by *Freedman*. The appeal procedures under the Ordinance are essentially identical whether the Board initially refuses to grant a license, or whether the Board suspends or revokes an already-existing license. *See* §§ 6.54.040(E)(2) (procedure for appealing denial of license); 6.54.150(E)(6) (procedure for appealing suspension or revocation of license). Therefore, this case is distinguishable from the *DLS* scenario, where "[a]ny modification to the licensing scheme would

26    *Deja Vu of Nashville, Inc.,*        No. 99-5071;
      *et al. v. The Metropolitan*    00-5284/5288/5881
      *Gov't of Nashville, et al.*

for noticeably demarcating the three-foot buffer zone). Furthermore, logic compels this interpretation. It would simply be nonsensical for Metropolitan Nashville to put the onus of customer control on the entertainer who is already removed at least three feet from the customer, is engaged in live entertainment, and is, by definition, incapable of preventing an approaching customer from touching her without engaging in the prohibited touching herself. "[I]nterpretations of a statute which would produce absurd results are to be avoided if alternative interpretations consistent with the legislative purpose are available." *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 575 (1982). Accordingly, we reject the plaintiffs' claim that the no-touch/buffer zone provision imposes *any* duty on entertainers, much less one that requires them to be held strictly liable for any violations.

Moreover, the Ordinance does not allow for strict liability, even for licensees. Section 6.54.150(B)(1) states that a club will be fined or have its license suspended (or both) for violating any of the Ordinance's provisions. However, Subsection (B)(1) also affords licensees the affirmative defense that management was "powerless to prevent" the violation. Accordingly, liability for violating the no-touch/buffer zone provision is limited to those instances where a licensee could have, but failed to prevent the proscribed conduct. The provision, thus interpreted, is constitutional.

F.

Finally, we address the plaintiffs' argument that the Ordinance fails to provide the prompt judicial review required of prior restraint schemes by *Freedman v. Maryland*, 380 U.S. 51 (1965). Specifically, the plaintiffs argue that because the Ordinance requires them to proceed to court via a common law writ of certiorari, it fails to protect their right to expeditious judicial review on the merits. Before reaching

No. 99-5071;      *Deja Vu of Nashville, Inc.,*   19
00-5284/5288/5881      *et al. v. The Metropolitan*
                      *Gov't of Nashville, et al.*

The plaintiffs argue that the disclosure provisions fail the fourth prong, however, because under the Tennessee Open Records Act, members of the public with illicit motives can easily obtain the personal information contained in the plaintiffs' application files, which includes their names and residential addresses. Therefore, the provisions will pose more than an incidental burden on First Amendment activities because those wishing to engage in such activities will be chilled by the threat of public exposure and possible violence. *See, e.g., McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 357 (1995) (stating purpose of First Amendment is "to protect unpopular individuals from retaliation – and their ideas from suppression"). Metropolitan Nashville responds that the required information is protected from public release (1) by the district court's order; (2) by Metropolitan Nashville's own opinion; (3) by the Tennessee Attorney General's opinion; and (4) by our decision in *Kallstrom v. City of Columbus*, 136 F.3d 1055, 1064-65 (6th Cir. 1998) (finding release of certain personnel information constitutionally prohibited).

Metropolitan Nashville's first three arguments cannot stand. First, the district court sealed the application files only "during the pendency of this litigation," and therefore its order is insufficient to protect any applicant's information indefinitely. Second, neither Metropolitan Nashville nor the Tennessee Attorney General have the power to create exceptions to Tennessee's Open Records Act. The Tennessee Supreme Court has interpreted the Tennessee Open Records Act, T.C.A. § 10-7-503(a), to mean that "the legislature reserved to itself alone the power to make public policy exceptions." *Memphis Publ'g Co. v. City of Memphis*, 871 S.W.2d 681, 685 (Tenn. 1994) (quoting *Memphis Publ'g Co. v. Holt*, 710 S.W.2d 513, 517 (Tenn. 1986)). Nonetheless, we agree with Metropolitan Nashville that our decision in *Kallstrom* saves this provision from being unconstitutional by prohibiting public release of all applicants' names and current and past residential addresses.

20   *Deja Vu of Nashville, Inc.,*      No. 99-5071;
     *et al. v. The Metropolitan*      00-5284/5288/5881
     *Gov't of Nashville, et al.*

*Kallstrom* held that police officers have a constitutionally protected privacy interest in their otherwise-public personnel file information, which includes addresses, phone numbers, and family member information, when the release of that information creates "a very real threat to the officers' and their family members' personal security and bodily integrity, and possibly their lives." *Kallstrom*, 136 F.3d at 1063. Here, the plaintiffs presented significant evidence that the requirement that applicants submit their names and past and current addresses to a public forum poses serious risks to their personal security. For instance, plaintiff Dawn Pierce, an entertainer at Deja Vu, testified that entertainers in the past have been stalked, harassed, and injured by customers, and that she is afraid to make public her name and residential address, as required by the Ordinance, because of serious potential risks to her physical safety and well-being. Dancers use stage names and have unpublished addresses and telephone numbers in order to minimize the risks of such harassment. Additionally, Pierce testified that there are a number of local organizations that have taken a strong stance against her profession. She is therefore also concerned that requiring her to release her name and residential address to a public forum will result in such groups harassing her at her home as a result of her choice to engage in erotic speech. Such risks also apply to individual business associates, such as registered agents, officers, directors, certain shareholders, club managers, and assistant managers, all of whom are likely to have to provide their names and addresses to the Board. *See* M.C.L. § 6.54.040(A)(5)(i), (j).

Applying *Kallstrom*'s reasoning to this context, we find that all sexually oriented business license and permit applicants' names and current and past residential addresses constitute protected private information and are therefore exempted from Tennessee's Open Records Act. Metropolitan Nashville cannot publicly release such private information; it can, however, require applicants to provide the identifying information to the licensing board for the limited purpose of

No. 99-5071;           *Deja Vu of Nashville, Inc.,*    25
00-5284/5288/5881       *et al. v. The Metropolitan*
                        *Gov't of Nashville, et al.*

entertainers and customers. Again, if customers and entertainers cannot converse while standing a mere three feet apart, it is because the plaintiffs have chosen to play their music at such a volume that conversation is impossible. Contrary to the plaintiffs' claims, the Ordinance does not force entertainers to choose between verbal communication and no music; as Metropolitan Nashville suggests, the plaintiffs can simply turn their music down a bit. The point is that any problems dancers may experience with receiving tips or speaking with customers will be caused not by the Ordinance, but by the clubs' refusal to alter their standard operating procedures in response to these constitutional regulations.

Finally, the plaintiffs challenge the no touch/buffer zone provision on the ground that it does not contain a mens rea requirement. As the Ordinance does not expressly limit the prohibited touching to intentional or knowing touches, the plaintiffs claim that even entertainers who merely seek to push a customer away will violate it. We disagree with the plaintiffs' reading of this provision. The provision states, in relevant part, that "[n]o customer shall be permitted to have any physical contact with any entertainer" during a live performance, and that all such performances must occur on a stage "removed at least three feet from the nearest customer." M.C.L. § 6.54.140(C). Rather than reading the provision as enacting two separate requirements, we read it as a single mandate, with the "no touch" portion setting forth a broad policy statement that no contact between dancers and customers shall occur during performances, and the "buffer zone" rule showing the specific way to implement that policy by prohibiting clubs from allowing customers within three feet of the stage during dances. Therefore, the provision places a duty not on the entertainer to avoid touching customers, but on the owners and operators of clubs to protect entertainers from being touched by customers by requiring customers to stay three feet away from the stage. *See also* § 6.54.050(A)(3) (detailing the licensee club's responsibility

24    *Deja Vu of Nashville, Inc.,*        No. 99-5071;
*et al. v. The Metropolitan*        00-5284/5288/5881
*Gov't of Nashville, et al.*

No. 99-5071;        *Deja Vu of Nashville, Inc.,*    21
00-5284/5288/5881        *et al. v. The Metropolitan*
*Gov't of Nashville, et al.*

distance between the erotic dancer and the audience. *See DLS*, 107 F.3d at 412-13.

The plaintiffs repeat the same arguments we rejected in *DLS*. First, they argue that the no touch/buffer zone provision goes too far because of its economic impact on the relevant market. Specifically, the plaintiffs point to evidence showing that compliance with the no touch/buffer zone provision will require extensive renovations of their clubs. We rejected that argument, however, in *DLS*, noting that the relevant inquiry is not whether the Ordinance will cause any economic impact on the sexually oriented businesses. *Id.* at 413. "[T]he First Amendment requires only that [Metropolitan Nashville] refrain from effectively denying [sexually oriented business owners] a reasonable opportunity to open and operate an adult theater within the city . . . ." *City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 54 (1986). Although we do not doubt that compliance with the Ordinance will cut into the plaintiffs' profits, the plaintiffs have failed to introduce any evidence showing that they will not have a reasonable opportunity to operate their establishments.

Second, the plaintiffs argue that the provision denies to erotic dancers the ability to profit from their expression by foreclosing the possibility of receiving tips. The plaintiffs are correct that the government cannot prohibit compensation for the exercise of First Amendment rights. *See, e.g., Simon & Schuster v. Crime Victims Bd.*, 502 U.S. 105, 115-16 (1991). Customers, however, remain free under the Ordinance to tip dancers before or after their performances. Alternatively, the clubs could decide to increase dancers' salaries, rather than requiring them to earn a living wage from their tips. In any event, the no touch/buffer zone provision merely requires that audience members not hand the dancers money during their dances, a sufficiently limited burden on the plaintiffs' First Amendment rights. For a similar reason, we also reject the plaintiffs' argument that the buffer zone violates the First Amendment by prohibiting all verbal communication between

ensuring compliance with the Ordinance's regulations, provided Metropolitan Nashville keeps that information under seal. "Anonymity is a shield from the tyranny of the majority," *McIntyre*, 514 U.S. at 357, but it is not a shield from all legitimate regulation. Therefore, as a result of our decision in *Kallstrom,* prohibiting public dissemination of the required private information, Metropolitan Nashville's disclosure requirements satisfy the fourth part of *O'Brien* because they are essential to ensuring continuing compliance with the Ordinance's licensing and permitting requirements, and because the reporting requirements pose only an incidental burden on applicants.

### D.

The plaintiffs next challenge the constitutionality of the fees charged pursuant to the Ordinance. The government may not tax the exercise of a constitutionally protected right. *See Northeast Ohio Coalition for the Homeless v. City of Cleveland*, 105 F.3d 1107, 1109 (6th Cir. 1997). Nonetheless, "an ordinance requiring a person to pay a license or permit fee before he can engage in a constitutionally protected activity does not violate the Constitution so long as the purpose of charging the fee is limited to defraying expenses incurred in furtherance of a legitimate state activity." *Id.* at 1109-10. Such a fee is not excessive, even if it is more than nominal, so long as it is "reasonably related to the expenses incident to the administration of the ordinance." *Id.* at 1110.

The Ordinance charges applicants five hundred dollars for a license, and one hundred dollars for a permit. Additionally, the Ordinance requires that "[i]f the [license or permit] application is denied, one-half of the fee shall be returned." *See* M.C.L. § 6.54.090(A), (B). Although the district court found the direct cost of processing license applications was thirty-three dollars, and the direct cost of processing permit applications was forty-three dollars, it failed to include in its

22  *Deja Vu of Nashville, Inc.,*          No. 99-5071;
     *et al. v. The Metropolitan*        00-5284/5288/5881
     *Gov't of Nashville, et al.*

calculations the $40,000 paid annually to an inspector "to enforce the civil disabilities provision," because it had already held that provision unconstitutional. The record reflects that comparing the yearly total of estimated fee revenue with the annual costs of enforcing the Ordinance results in a net loss to Metropolitan Nashville. Accordingly, we find that the fees charged are reasonably related to the expenses incident to the administration of the Ordinance.

E.

Next the plaintiffs raise challenges to the Ordinance's "no touch/buffer zone" provision. Section 6.54.140(C) states that

No customer shall be permitted to have any physical contact with any entertainer on the licensed premises while the entertainer is engaged in a performance of live sexually oriented entertainment. All performances of live sexually oriented entertainment shall only occur upon a stage at least eighteen inches above the immediate floor level and removed at least three feet from the nearest customer.

As with any other violation of Chapter 6.54, one violation of the buffer zone may result in a five hundred dollar fine, suspension of the operating license for between five and thirty days, or both. *See* M.C.L. § 6.54.150(B)(2). A second violation within a two-year period requires suspension for between thirty-one and ninety days. *See* M.C.L. § 6.54.150(B)(3). A third violation will result in a one-year revocation of the license. *See* M.C.L. § 6.54.150(C)(9).

As an initial matter, we note that the three-foot buffer zone surrounds the stage, not the dancer. Therefore, we reject the plaintiffs' argument that the provision creates a "floating buffer zone." *See* M.C.L. § 6.54.140(C); M.C.L. § 6.54.050(A)(3) (stating "[a] three-foot boundary from the

No. 99-5071;          *Deja Vu of Nashville, Inc.,*  23
00-5284/5288/5881        *et al. v. The Metropolitan*
                         *Gov't of Nashville, et al.*

outer edge of the stage shall be indicated on the floor . . . so that the customer will not invade the three-foot boundary").

We find that this provision also satisfies the *O'Brien* test: Metropolitan Nashville properly passed this portion of the Ordinance pursuant to its police power; it intended this provision to redress the high instances of sex crimes prevalent at sexually oriented businesses and to deter the spread of disease; and requiring dancers to perform on stages removed three feet from any customer poses only an incidental burden on their right to erotic speech that is no greater than is essential to further Metropolitan Nashville's substantial interests. *See DLS, Inc. v. City of Chattanooga*, 107 F.3d 403, 412-13 (6th Cir. 1997) (upholding six-foot buffer zone to more effectively enforce ban on contact between erotic dancers and audience members and to prevent occurrence of activities likely to result in criminal behavior or to prevent risk of disease).

We agree with the plaintiffs that the First Amendment protects the entertainers and audience members' right to free expressive association. They are certainly engaged in a "collective effort on behalf of shared goals." *See Roberts v. United States Jaycees*, 468 U.S. 609, 622 (1984). The dancers and customers work together as speaker and audience to create an erotic, sexually-charged atmosphere, and although society may not find that a particularly worthy goal, it is a shared one nonetheless. The right to associate for expressive purposes, however, is not absolute. "Infringements on that right may be justified by regulations adopted to serve compelling state interests, unrelated to the suppression of ideas, that cannot be achieved through means significantly less restrictive of associational freedoms." *Id*. at 623. In attempting to restrict opportunities to engage in prostitution and to guard against the spread of disease through the public release or exchange of bodily fluids, Metropolitan Nashville has gone no farther than necessary by requiring a three-foot