RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 08a0188p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

SENSATIONS, INC.; LADY
GODIVA'S, INC., and LITTLE RED BARN ADULT
THEATRE & BOOKSTORE, INC.,

　　　　　　　　　*Plaintiffs-Appellants*,

　　　*v.*

CITY OF GRAND RAPIDS; MICHIGAN DECENCY
ACTION COUNCIL, INC.; JUDY ROSE; DAR VANDER
ARK; BLACK HILLS CITIZENS FOR A BETTER
COMMUNITY, INC.,

　　　　　　　　　*Defendants-Appellees.*

> Nos. 06-2168/2508/2510;
> 07-1504

Appeal from the United States District Court
for the Western District of Michigan at Kalamazoo.
Nos. 06-00060; 06-00300—Robert Holmes Bell, Chief District Judge.

Argued: January 30, 2008

Decided and Filed: May 20, 2008

Before: MERRITT, DAUGHTREY, and MOORE, Circuit Judges.

---

### COUNSEL

**ARGUED:** Michael L. Donaldson, Livonia, Michigan, J. Michael Southerland, J. MICHAEL SOUTHERLAND, P.C., for Appellants. Scott D. Bergthold, LAW OFFICE OF SCOTT D. BERGTHOLD, P.L.L.C., Chattanooga, Tennessee, James R. Wierenga, DAVID & WIERENGA, P.C., Grand Rapids, Michigan, for Appellees. **ON BRIEF:** Michael L. Donaldson, Livonia, Michigan, J. Michael Southerland, J. MICHAEL SOUTHERLAND, P.C., Plymouth, Michigan, for Appellants. Scott D. Bergthold, LAW OFFICE OF SCOTT D. BERGTHOLD, P.L.L.C., Chattanooga, Tennessee, James R. Wierenga, DAVID & WIERENGA, P.C., Grand Rapids, Michigan, Catherine M. Mish, CITY ATTORNEY'S OFFICE, Grand Rapids, Michigan, for Appellees.

---

### OPINION

---

KAREN NELSON MOORE, Circuit Judge. This case concerns a consolidated appeal by Sensations, Inc. et al. ("Sensations") and Little Red Barn Adult Theatre & Bookstore, Inc. ("Little Red Barn") (collectively "Plaintiffs-Appellants"), from the grant of a judgment on the pleadings to

1

the City of Grand Rapids ("Grand Rapids") and various private citizens and citizens' groups (collectively "Defendants"). These private citizens and citizens' groups include Michigan Decency Action Council, Inc., Judy Rose, Dar Vander Ark, and Black Hills Citizens for a Better Community (collectively "Non-City Defendants-Appellees"). Plaintiffs-Appellants filed a complaint in the United States District Court for the Western District of Michigan, seeking a preliminary injunction against an ordinance regulating sexually oriented businesses on the ground that the ordinance violated Plaintiffs-Appellants' First Amendment and Due Process rights. The district court denied Plaintiffs-Appellants' motion for a preliminary injunction, granted Defendants' motion for judgment on the pleadings, and awarded attorney fees to Non-City Defendants-Appellees to be paid by Little Red Barn.

## I.  FACTS AND PROCEDURE

After learning that a local businessman was planning to open a sexually oriented business in downtown Grand Rapids, Non-City Defendants-Appellees mobilized in favor of a regulatory ordinance. When the Grand Rapids City Council expressed initial reluctance to pass such an ordinance because of the potential costs of defending it against litigation, Non-City Defendants-Appellees promised that they would fund any necessary legal defense with personal and privately raised monies. On April 25, 2006, the Grand Rapids City Council passed Ordinance 2006-23 ("the Ordinance"), entitled Conduct in Sexually Oriented Businesses. Grand Rapids justified the Ordinance on the basis of the negative secondary effects associated with sexually oriented businesses.

Pursuant to the Ordinance, a sexually oriented business means "any adult motion picture theater, adult bookstore, adult novelty store, adult video store, adult cabaret or semi-nude model studio as defined in Section 5.284 of [the Grand Rapids] Code." Joint Appendix ("J.A.") at 45 (Ordinance at § 2(5)). The Ordinance contains the following major provisions: (1) a prohibition on total nudity; (2) the requirement that semi-nude adult-entertainment performers maintain a six-foot distance from patrons, on a stage at least eighteen inches from the floor, in a room of at least six-hundred square feet; (3) the configuration of any room where "any mechanical or electronic image-producing device . . . display[s] . . . specified sexual activities or specified anatomical areas . . . in such a manner that there is an unobstructed view from an operator[']s station of every area of the premises"; (4) a 180-day compliance allowance; (5) a no-touching rule between sexual performers and audience members; (6) a prohibition on the operation of a sexually oriented business between the hours of two A.M. and seven A.M. J.A. at 45-46 (Ordinance at § 3).

The Ordinance provides the following definitions:

"Nudity," "nude," or "state of nudity" means the knowing or intentional live display of a human genital organ or anus with less than a fully opaque covering or a female's breast with less than a fully opaque covering of the nipple and areola. Nudity, as used in this section, does not include a woman's breast-feeding of a baby whether or not the nipple or areola is exposed during or incidental to the feeding. . . .

"Semi-nudity," "semi-nude," or in a "semi-nude condition" means the showing of the female breast below a horizontal line across the top of the areola and extending across the width of the breast at that point, or the showing of the male or female buttocks. This definition shall include the lower portion of the human female breast, but shall not include any portion of the cleavage of the human female breasts exhibited by a bikini, dress, blouse, shirt, leotard, or similar wearing apparel provided the areola is not exposed in whole or in part.

J.A. at 44-45 (Ordinance at §§ 2(b)(ii), 2(b)(iv)).

Co-plaintiffs Sensations, Inc. and Lady Godiva's, Inc. filed a complaint in the United States District Court for the Western District of Michigan, alleging that Grand Rapids had infringed on their First Amendment rights in violation of 42 U.S.C. § 1983. The district court consolidated the case filed by Sensations with a suit filed by Little Red Barn against both Grand Rapids and Non-City Defendants-Appellees. Little Red Barn filed a motion for a continuation of a stay of enforcement or for a preliminary injunction, in which Sensations joined. Grand Rapids filed a motion for judgment on the pleadings, as did Non-City Defendants-Appellees. Sensations filed a brief in opposition supported by twenty-six exhibits. Little Red Barn filed its Response and Brief in Opposition and attached the affidavit of Dr. Daniel Linz and supporting documents.

The district court denied the motion for a continuation of a stay or for a preliminary injunction. Little Red Barn filed a timely notice of appeal. The district court later issued an opinion granting the Defendants' motion for judgment on the pleadings. Little Red Barn filed a timely notice of appeal, as did Sensations. The district court awarded attorney fees to Non-City Defendants-Appellees to be paid by Little Red Barn, and Little Red Barn filed a timely notice of appeal.

## II.  ANALYSIS

### A.  Standard of Review

Motions for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) are analyzed under the same de novo standard as motions to dismiss pursuant to Rule 12(b)(6). *Penny/Ohlmann/Nieman, Inc. v. Miami Valley Pension Corp.*, 399 F.3d 692, 697 (6th Cir. 2005). We review the district court's denial of Plaintiffs-Appellants' motion for a preliminary injunction for abuse of discretion. *Am. Civil Liberties Union of Ohio, Inc. v. Taft*, 385 F.3d 641, 645 (6th Cir. 2004). In *Bell Atlantic Corp. v. Twombly*, 550 U.S. ---, 127 S. Ct. 1955 (2007), the Supreme Court explained that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . . Factual allegations must be enough to raise a right to relief above the speculative level . . . ." *Id.* at 1964-65 (internal citations omitted). In *Erickson v. Pardus*, 550 U.S. ---, 127 S. Ct. 2197 (2007), decided two weeks after *Twombly*, however, the Supreme Court affirmed that "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief.' Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Id.* at 2200 (quoting *Twombly*, 127 S. Ct. at 1964). The opinion in *Erickson* reiterated that "when ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." *Id.* (citing *Twombly*, 127 S. Ct. at 1965). We read the *Twombly* and *Erickson* decisions in conjunction with one another when reviewing a district court's decision to grant a motion to dismiss for failure to state a claim or a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12.[1]

---

[1]We have previously "noted some uncertainty concerning the scope of" *Twombly*. *Commercial Money Ctr., Inc. v. Illinois Union Ins. Co.*, 508 F.3d 327, 337 n.4 (6th Cir. 2007). In particular, we have taken note of the Second Circuit's interpretation of *Twombly* as enacting a "plausibility standard [which] did not significantly alter notice pleading or impose heightened pleading requirements for all federal claims[, and] [i]nstead, . . . require[d] more concrete allegations only in those instances in which the complaint, on its face, does not otherwise set forth a plausible claim for relief." *Weisbarth v. Geauga Park Dist.*, 499 F.3d 538, 542 (6th Cir. 2007) (citing *Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007)).

## B.  Did the District Court Err by Converting a Rule 12(c) Motion into a Rule 56 Motion?

Plaintiffs-Appellants argue that by considering the legislative record attached to Defendants' motion the district judge improperly converted a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) into a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56.  Federal Rule of Civil Procedure 10(c) provides that "[a] copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."[2]  We have previously held that a district court converts a Rule 12(c) motion into a Rule 56 motion when the district judge merely "fail[s] to exclude presented outside evidence." *Max Arnold & Sons, LLC v. W.L. Hailey & Co.*, 452 F.3d 494, 503 (6th Cir. 2006).  Thus the question before us is whether the legislative record comes within the scope of Rule 10(c) or is "outside evidence" under *Max Arnold*.

In the instant case, we hold that the district court did not convert Defendants' Rule 12(c) motion into a Rule 56 motion.  Certainly, the district judge accepted as evidence of secondary effects the legislative record, which Defendants attached to their motion for judgment on the pleadings.  Were the legislative record to constitute a document outside the pleadings, then the district judge would have converted a motion for judgment on the pleadings into a motion for summary judgment.  The legislative record did not constitute such an external document, however.[3]  Sensations attached a copy of the Ordinance to its complaint as Exhibit A; under Rule 10(c), therefore, we treat the Ordinance as part of the pleadings.  The Ordinance, in turn, states that "[t]he City hereby adopts and incorporates herein its stated findings and legislative record related to the adverse secondary effects of sexually oriented businesses, including the judicial opinions and reports related to such secondary effects."  J.A. at 43 (Ordinance at § 1(a)).  By attaching the Ordinance to the complaint, therefore, Sensations also incorporated the legislative record into the pleadings.  Because Sensations had notice via its own actions that the legislative record formed part of the pleadings, the district judge acted fairly when he considered the Ordinance and legislative record as part of the pleadings, while excluding outside evidence including the Linz affidavit.  The district judge in this case appropriately excluded additional affidavits presented by both sides that went beyond the legislative record; therefore, he did not convert Defendants' motion for judgment on the pleadings into a motion for summary judgment.

## C.  Did the District Court Err in Denying Plaintiffs-Appellants' Request to Conduct Discovery?

The crux of this case is whether Plaintiffs-Appellants were entitled to discovery that might have yielded evidence enabling them to disprove negative secondary effects at the local level.  In *Deja Vu of Nashville, Inc. v. Metropolitan Government of Nashville*, 466 F.3d 391, 398 (6th Cir.

---

[2]This language became effective December 1, 2007.  The new language represents a stylistic change from the former language of Fed. R. Civ. P. 10(c), which provided that:  "[a] copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes."  We may apply the new language to proceedings pending as of the effective date insofar as the application is practicable and just.  28 U.S.C. § 2074(a).

[3]Little Red Barn argues that the affidavits and articles contained within the legislative record are not properly considered part of that record because Grand Rapids City Council members received the materials on the day they adopted Ordinance 23 and could not have discussed the materials prior to passage of the Ordinance.  It is not within our province, however, to speculate as to how quickly or carefully the Council members might have read the documents that comprise the legislative record.  Little Red Barn is correct to point out that Article 37 in the record was published in May 2006, one month after the passage of the Ordinance.  At oral argument, counsel for Grand Rapids clarified that the City Council obtained an advance copy of the article, which it included in the legislative record.  Counsel for Little Red Barn did not dispute this explanation, which satisfies any concerns we might have had regarding whether the City Council actually could have relied on the evidence it included in the legislative record.

2006) (*Deja Vu of Nashville III*)[4], *cert. denied*, --- U.S. ---, 127 S. Ct. 2088 (2007), we held that the plaintiff adult-entertainment business Deja Vu was "not entitled to discovery regarding secondary effects." Plaintiffs-Appellants argue that *Deja Vu of Nashville III* can be distinguished from the instant case on the basis of its procedural history; that the critical statement regarding discovery amounted to dicta; and, if not, that the Sixth Circuit's decision violates the Supreme Court's decision in *City of Los Angeles v. Alameda Books, Inc.*, 535 U.S. 425 (2002).[5]

We find Plaintiffs-Appellants' arguments unconvincing and conclude that *Deja Vu of Nashville III* forecloses their argument regarding entitlement to discovery. In neither *Deja Vu of Nashville III* nor the instant case did plaintiffs receive a trial on the merits. *See Deja Vu of Nashville III*, 466 F.3d at 394, 398 (noting that in *Deja Vu* a trial on the merits was unnecessary because there were no unresolved issues of fact and that plaintiff was not entitled to discovery regarding localized secondary effects). Moreover, the *Deja Vu* litigation involved a magistrate judge's order insulating the defendant government from discovery regarding secondary effects, an order which the district court never reviewed. *Id.* at 398. Thus, the procedural history of the *Deja Vu* case is analogous to the current controversy, where the district court entered judgment on the pleadings without allowing Plaintiffs-Appellants to conduct discovery. In addition, the opinion in *Deja Vu of Nashville III* did not present its conclusion regarding discovery as dicta but rather stated it was "fundamental[]" to the holding of the case. *Id.* Plaintiffs-Appellants' third contention—that *Deja Vu of Nashville III* is incorrect under *Alameda Books*—is similarly unpersuasive. As the district court correctly determined, *Deja Vu of Nashville III* is a binding interpretation of *Alameda Books*. *Sensations, Inc. v. City of Grand Rapids*, No. 1:06-CV-300, No. 4:06-CV-60, 2006 U.S. Dist. Lexis 77159, at *25-*26 (W.D. Mich. Oct. 23, 2006). Because this panel cannot overturn the decision of a prior Sixth Circuit panel, we must conclude that the district court did not err in denying Plaintiffs-Appellants the opportunity for further discovery before entering judgment on the pleadings. *See Salmi v. Sec'y of Health & Human Servs.*, 774 F.2d 685, 689 (6th Cir. 1985); 6th Cir. R. 206(c) (a later panel cannot overrule a prior panel's published opinion).

**D. Did the District Court Err in Determining that the Ordinance Satisfies the *O'Brien* test Applicable to the Regulation of Sexually Oriented Businesses?**

Nude dancing is a form of expressive conduct protected by the First Amendment. *Deja Vu of Nashville, Inc. v. Metro. Gov't of Nashville* (*Deja Vu of Nashville I*), 274 F.3d 377, 391 (6th Cir.), *cert. denied*, 535 U.S. 1073 (2002). Nevertheless, in accordance with Supreme Court precedent, the Sixth Circuit treats laws such as the Ordinance, which regulate adult-entertainment businesses, as if they were content neutral. *Richland Bookmart, Inc. v. Nichols*, 137 F.3d 435, 438-39 (6th Cir. 1998). We have applied the test first set forth in *United States v. O'Brien*, 391 U.S. 367 (1968), to regulations on the operation of sexually oriented businesses. *See, e.g.*, *Deja Vu of Cincinnati, L.L.C. v. Union Twp. Bd. of Trs.*, 411 F.3d 777, 789-90 (6th Cir. 2005) (en banc) (applying the *O'Brien* test

---

[4] The district court opinion refers to this case as *Deja Vu II*. We have labeled it *Deja Vu of Nashville III* because of the existence of an intervening decision between it and *Deja Vu of Nashville, Inc. v. Metropolitan Government of Nashville* (*Deja Vu of Nashville I*), 274 F.3d 377 (6th Cir.), *cert. denied*, 535 U.S. 1073 (2002). The intervening decision, which the Sixth Circuit in *Deja Vu of Nashville III* refers to as *Deja Vu II*, was *Deja Vu of Nashville, Inc. v. Metropolitan Government of Nashville*, 421 F.3d 417 (6th Cir. 2005), *cert. denied*, --- U.S. ---, 126 S. Ct. 2916 (2006).

[5] In *Alameda Books*, a plurality (rather than a majority) of the Supreme Court set forth a burden-shifting framework governing the evidentiary standard in secondary-effects cases. The framework involves three steps: (1) the city must put forth evidence of the nexus between the challenged regulation and the reduction of secondary effects; (2) plaintiffs may "cast direct doubt on this rationale, either by demonstrating that the municipality's evidence does not support its rationale or by furnishing evidence that disputes the municipality's factual findings"; and (3) "[i]f plaintiffs succeed in casting doubt on a municipality's rationale in either manner, the burden shifts back to the municipality to supplement the record with evidence renewing support for a theory that justifies its ordinance." *Id.*, 535 U.S. at 438-39.

to an hours-of-operation provision); *Deja Vu of Nashville I*, 274 F.3d at 396 (applying the *O'Brien* test to a regulation requiring a specified buffer zone between the performer and audience); *DLS, Inc. v. City of Chattanooga*, 107 F.3d 403, 410 (6th Cir. 1997) (same). J.A. at 43-44 (Ordinance at § (1)).

The *O'Brien* test requires us to determine whether Grand Rapids enacted the Ordinance "(1) within its constitutional power, (2) to further a substantial governmental interest that is (3) unrelated to the suppression of speech, and whether (4) the provisions pose only an 'incidental burden on First Amendment freedoms that is no greater than is essential to further the government interest.'" *Deja Vu of Nashville I*, 274 F.3d at 393. First, Plaintiffs-Appellants argue that Grand Rapids did not have the authority to pass the Ordinance because the city did not show a nexus between the regulations and a reduction in secondary effects. But arguing that the evidentiary basis is weak avoids the question we must decide, which is whether the city enacted the Ordinance within its constitutional powers. We have previously held that regulating sexually oriented businesses to reduce negative secondary effects lies within the scope of a city's authority under the *O'Brien* test. *Id.* at 393-94; *see also DLS, Inc.*, 107 F.3d at 410. Second, the secondary effects which Grand Rapids desires to reduce are "undeniably important" government interests. *Deja Vu of Cincinnati*, 411 F.3d at 790 (quoting *City of Erie v. Pap's A.M.*, 529 U.S. 277, 296, 300 (2000) (plurality opinion)). Third, Grand Rapids aimed at suppressing the secondary effects associated with sexually oriented businesses and not the speech communicated by those businesses. J.A. at 43-44 (Ordinance at § 1).

Finally, the district court offered sound reasons why the Ordinance is narrowly tailored to the reduction of secondary effects. The prohibition of full nudity has been viewed as having only a de minimis effect on the expressive character of erotic dancing. *See City of Erie*, 529 U.S. at 301; *Barnes v. Glen Theatre, Inc.*, 501 U.S. 560, 572 (1991) (plurality opinion). A plurality of the Supreme Court in *Pap's A.M.* rejected the argument that a ban on total nudity "enacts a complete ban on expression" and instead found that the ban "ha[d] the effect of limiting one particular means of expressing the kind of erotic message being disseminated." 529 U.S. at 292-93. In addition, the Sixth Circuit has upheld every one of the other regulatory provisions contained in the Ordinance: the six-foot distance requirement between performer and audience members and the no-touching rule; the open-booth requirement; and the limitation on hours of operation. *See Deja Vu of Cincinnati*, 411 F.3d at 789-91 (upholding an hours-of-operation limitation on adult businesses); *Deja Vu of Nashville I*, 274 F.3d at 396 (upholding a three-foot buffer/no-touching regulation); *Richland Bookmart*, 137 F.3d at 440-41 (upholding limitations on the hours and days that an adult-entertainment business could operate); *DLS, Inc.*, 107 F.3d at 408-13 (upholding a six-foot buffer/no-touching regulation); *Bamon Corp. v. City of Dayton*, 923 F.2d 470, 474 (6th Cir. 1991) (upholding an open-booth requirement). Given the overwhelming weight of precedent against their case, we asked Plaintiffs-Appellants at oral argument which specific provisions of the Ordinance allegedly violated the First Amendment. Plaintiffs-Appellants could offer no answer except to argue that the sum of the Ordinance's parts placed such a significant burden on speech as to violate the First Amendment, even though each individual provision is constitutional. This argument is unavailing.

Plaintiffs-Appellants also argue that cameras in booths would be a less-restrictive means of reducing illicit sexual activities and that a buffer requirement is not necessary for peep shows. The Supreme Court, however, has found that a regulation narrowly tailored to achieve a government interest "need not be the least restrictive or least intrusive means of doing so." *Ward v. Rock Against*

*Racism*, 491 U.S. 781, 798 (1989).[6]  We therefore affirm the decision of the district court that the Ordinance satisfies the *O'Brien* test and is thus constitutional.

**E.    Did the District Court Err in Concluding that the Ordinance does Not Violate the Rights to Free Association or Due Process, and is Not Unconstitutionally Overbroad or Vague?**

We also affirm the district court's well-reasoned explanation why the Ordinance does not violate Plaintiffs-Appellants' right to freedom of association and is neither overbroad, nor vague, nor a violation of due process.  Plaintiffs-Appellants' freedom-of-association claim is foreclosed by our prior holding that a mandatory buffer between performer and audience and a no-touching rule do not violate the right to free association.  *Deja Vu of Nashville I*, at 396-97.  In support of their overbreadth claim, Plaintiffs-Appellants cite *Odle v. Decatur County*, 421 F.3d 386, 399 (6th Cir. 2005), in which the Sixth Circuit found overbroad a general public-nudity ordinance.  But a regulation banning total nudity in sexually oriented businesses is far narrower than a similar regulation applicable to the general public.  The overbreadth doctrine is, moreover, "manifestly, strong medicine" and should be employed "only as a last resort."  *Broadrick v. Oklahoma*, 413 U.S. 601, 613 (1973).  In the instant case, there does not exist "a realistic danger that the statute itself will significantly compromise recognized First Amendment protections of parties not before the Court." *Members of City Council v. Taxpayers for Vincent*, 466 U.S. 789, 801 (1984).  Plaintiffs-Appellants' claim that the Ordinance is vague fails because the Ordinance's definition of semi-nudity, which clearly states what parts of the female breast may be exposed, provides adequate notice, establishes standards that may guide enforcement, and does not inhibit First Amendment freedoms.  *See Deja Vu of Cincinnati*, 411 F.3d at 798.  Finally, Plaintiffs-Appellants do not challenge the reasoning of the district court regarding why the Ordinance is not an unconstitutional taking and does not violate procedural or substantive due process.[7]

**F.    Did the District Court Abuse Its Discretion by Awarding Attorney Fees to Non-City Defendants-Appellees?**

By affirming the district court's conclusion that the Ordinance is constitutional, we also necessarily affirm the dismissal of claims against both Grand Rapids and Non-City Defendants-Appellees.  Despite dismissing the claims against Non-City Defendants-Appellees, we conclude that the District Court abused its discretion by awarding attorney fees to Non-City Defendants-Appellees and, therefore, we reverse the award of these fees.

In reaching this conclusion, we acknowledge that the question of whether the district court abused its discretion by awarding attorney fees is a close one.  The difficulty in resolving the fees issue lies primarily in the fact that even had we found the Ordinance unconstitutional, we might well have dismissed the § 1983 claims against Non-City Defendants-Appellees.  We would be required to dismiss these claims if we found that the actions of these private citizens and citizens' groups are not "'fairly attributable to the state.'"  *Chapman v. Higbee Co.*, 319 F.3d 825, 833 (6th Cir. 2003)

---

[6]This statement of the standard for a narrowly tailored regulation applies both to cases analyzed under *O'Brien* and time, place, or manner regulations.  *Ward*, 491 U.S. at 798 ("[W]e have held that the *O'Brien* test 'in the last analysis is little, if any, different from the standard applied to time, place, or manner restrictions.'" (quotation omitted)).

[7]Plaintiffs-Appellants argue only that Grand Rapids needed to consider more evidence regarding secondary effects, citing *Flanigan's Enterprises, Inc. v. Fulton County*, 242 F.3d 976 (11th Cir. 2001), *cert. denied*, 536 U.S. 904 (2002).  However, *Flanigan's Enterprises* actually supports a conclusion that the passage of the Ordinance did not violate due process.  In that case, the Eleventh Circuit held that although a county ordinance failed the *O'Brien* test because the county had not relied on evidence relevant to asserted secondary effects, the passage of the ordinance had not violated plaintiffs' procedural due process rights.  *Id.* at 987-89.

(en banc) (quoting *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 947 (1982)), *cert. denied*, 542 U.S. 945 (2004).

On appeal, Little Red Barn contends that a symbiotic relationship existed between the city of Grand Rapids and the citizens who advocated for the Ordinance and who offered and provided funds to defend it against litigation. As we have observed, "The Supreme Court has developed three tests for determining the existence of state action in a particular case: (1) the public function test, (2) the state compulsion test, and (3) the symbiotic relationship or nexus test." *Id.* Little Red Barn argues that the citizens' actions fell within the scope of the third test because the private citizens usurped the government's obligation to propose legislation as well as the government's power to tax and raise money. In *Chapman*, we held that "[u]nder the symbiotic or nexus test, a section 1983 claimant must demonstrate that there is a sufficiently close nexus between the government and the private party's conduct so that the conduct may be fairly attributed to the state itself." *Id.* at 834. The inquiry proceeds on a case-by-case basis and is fact-specific. *Id.*

As a categorical matter, the cooperative relationship between Grand Rapids and the Non-City Defendants-Appellees that arose solely as a result of the citizens' non-monetary mobilization in support of the Ordinance could not rise to the level of a "symbiotic relationship" as defined in *Chapman*. Merely petitioning a local government to pass specific legislation is the kind of political speech at the heart of First Amendment protection. Furthermore, if advocacy for a piece of legislation established a symbiotic relationship between citizens and the state, then citizen activists would automatically be vulnerable to § 1983 suits arising from constitutionally unsound legislation they supported. This would seriously chill citizen advocacy and burden our democracy, a cornerstone of which is citizen engagement in the legislative process.

The more difficult question is whether in offering to pay for the defense of the Ordinance, and indeed here in actually making substantial payments, Non-City Defendants-Appellees created a symbiotic relationship to the state. We conclude that the offer by private citizens to fund the defense of an ordinance, and acceptance by a local governing body, does not necessarily establish a symbiotic relationship for purposes of a § 1983 claim.[8] We caution, however, that the admonition in *Chapman* to evaluate the existence or absence of symbiotic relationship on a case-by-case and factually specific basis remains true in the context of an offer by private citizens to fund the defense of legislation and an acceptance by a governmental entity. In the instant case, because we found the Ordinance constitutional we do not need definitively to resolve the question whether by funding the defense of the Ordinance, Non-City Defendants-Appellees created a symbiotic relationship with Grand Rapids.

We find it important, however, as a precursor to our discussion of whether the district court erred in awarding attorney fees, to show that arguments exist on both sides of the issue respecting the existence of a symbiotic relationship. On the one hand, the idea of citizens being able, effectively, to buy particular ordinances and statutes in service of their private interests, or their own unique vision of the public interest, offends our national ideal of legislators serving the public as a whole. On the other hand, as one judge suggested at oral argument, the reality of our political process already falls far from that ideal. Non-City Defendants-Appellees' offer of funds does not differ significantly from the offer of campaign donations routinely made by lobbyists favoring certain pieces of legislation and opposing others. Furthermore, the Supreme Court has held that government funding of private entities via contracts does not create a symbiotic relationship.

---

[8]At oral argument, counsel for Non-City Defendants-Appellees stated that they would not dispute evidence submitted by Little Red Barn demonstrating that Grand Rapids had indeed accepted the offer made by Non-City Defendants-Appellees to cover the expense of defending the Ordinance.

*Rendell-Baker v. Kohn*, 457 U.S. 830, 843 (1982) ("Here the school's fiscal relationship with the State is not different from that of many contractors performing services for the government. No symbiotic relationship . . . exists here.") As a corollary, private funding offered in defense of a government ordinance would similarly not create a symbiotic relationship. Although Non-City Defendants-Appellees' offer of funding may have tipped the balance toward passage of the Ordinance, ultimately members of the Grand Rapids City Council and not Non-City Defendants-Appellees made the decision to pass the Ordinance. In the circumstances of this case, therefore, even had we found the Ordinance unconstitutional, we might well have dismissed the claims against Non-City Defendants-Appellees.

Nevertheless, we reverse the district court's award of attorney fees to Non-City Defendants-Appellees. "We review a district court's award of attorneys fees under 42 U.S.C. § 1988 based on an abuse of discretion standard." *Wilson-Simmons v. Lake County Sheriff's Dep't*, 207 F.3d 818, 823 (6th Cir. 2000). "'[A] prevailing *defendant* should only recover upon a finding by the district court that the plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith.'" *Wolfe v. Perry*, 412 F.3d 707, 720 (6th Cir. 2005) (quoting *Wayne v. Village of Sebring*, 36 F.3d 517, 530 (6th Cir. 1994), *cert. denied*, 514 U.S. 1127 (1995)). "In applying these criteria, it is important that a district court resist the understandable temptation to engage in *post hoc* reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation." *Christiansburg Garment Co. v. Equal Employment Opportunity Comm'n*, 434 U.S. 412, 421-22 (1978). We conclude that the district court abused its discretion because Little Red Barn's claim against Non-City Defendant-Appellees was neither frivolous nor unreasonable.

Little Red Barn sought not only injunctive relief from Grand Rapids but also other forms of relief from Non-City Defendants-Appellees. Most significantly, Little Red Barn sought monetary damages from Non-City Defendants-Appellees to compensate for "emotional and financial injury." J.A. at 69-70 (LRB Compl. at ¶ 56). In addition, Little Red Barn sought declaratory relief that the "City's relationship with the remaining defendants is constitutionally impermissible." J.A. at 68 (LRB Compl. at ¶ 50). Such a declaration would apply to both Grand Rapids and Non-City Defendants-Appellees and would deter both the City Council and private citizens from entering into a similar relationship in the future.

When Little Red Barn brought suit, neither the Supreme Court nor the Sixth Circuit had addressed the question of whether private citizens' offer of funding to defend a statute, were it to pass, creates a symbiotic relationship with the state. The Sixth Circuit affirms awards of attorney fees only when plaintiffs relitigated already-settled legal matters, and we reverse the award of attorney fees when issues of law remained unresolved or when a "plaintiff ha[d] an arguable basis for pursuing his or her claim." *Smith v. Smythe-Cramer Co.*, 754 F.2d 180, 183-84 (6th Cir.), *cert. denied*, 473 U.S. 906 (1985). Therefore, even if we were to conclude that a financial relationship, such as the one between Grand Rapids and Non-City Defendants-Appellees, could never create a symbiotic relationship for purposes of § 1983 claims, we must reverse the award of attorney fees because Little Red Barn could not have known of this hypothetical legal conclusion in advance. Penalizing Little Red Barn for bringing a claim, when Little Red Barn was not on notice that such a claim could not succeed in district court, would be inequitable. "[W]hen a district court awards counsel fees to a prevailing plaintiff, it is awarding them against a violator of federal law. . . . A successful defendant seeking counsel fees . . . must rely on quite different equitable considerations." *Christiansburg*, 434 U.S. at 418-19. For these reasons, we reverse the district court's award of attorney fees against Little Red Barn.

## III.  CONCLUSION

For the reasons explained above, we **AFFIRM** the district court's denial of Plaintiffs-Appellants' motion for a preliminary injunction as well as the district court's grant of Defendants' motion for judgment on the pleadings for both Grand Rapids and Non-City Defendants-Appellees. However, we **REVERSE** the district court's award of attorney fees to Non-City Defendants-Appellees.